574 So.2d 464 (1991)
Eddie COOK and Dorothy Cook, Plaintiff/Appellant,
v.
Harold SPILLERS, Individually and d/b/a H & L Auto Sales, Defendant/Appellee.
No. 22014-CA.
Court of Appeal of Louisiana, Second Circuit.
January 23, 1991.
Brenza R. Irving, Monroe, for plaintiff/appellant.
A.W. Block, Jr., West Monroe, for defendant/appellee.
Before SEXTON, NORRIS and LINDSAY, JJ.
*465 LINDSAY, Judge.
This suit arises from an allegedly illegal repossession of an automobile. The plaintiff, Eddie Cook (or Cooks)[1], appeals from a city court judgment rejecting his claims for damages against the defendants, Harold Spillers and H & L Auto Sales. For the following reasons, we reverse the trial court judgment.

FACTS
In 1984, Eddie Cook purchased a 1977 Buick Regal automobile from the defendants. Subsequently, the plaintiff decided to purchase a 1978 Lincoln from the defendants. As part of this transaction, which occurred on October 12, 1985, the defendants accepted the Buick Regal as a tradein.
The original sales price of the Lincoln was $2,850, plus taxes, for a total of $3,019.50. The evidence reveals that at the time of the trade-in, a balance of $422 was owed on the Buick Regal. Mr. Cook agreed to pay this amount in a few days. On October 17, 1985, the plaintiff paid $500 in cash. This amount represented the payoff of the balance of $422 owed on the Buick Regal, plus $78 which was credited towards the purchase price of the Lincoln. (Unfortunately, the receipt for the $500 showed it to be payment on the Lincoln only, thus leading to unnecessary confusion.)
In addition to paying $78 in cash, the plaintiff also received $1,500 on the trade-in of the Buick Regal, thus leaving a balance of $1,441.50. The plaintiff allegedly signed a promissory note in the original principal amount of $1,441.50. The note provided for no interest or finance charges, and was payable in 14 monthly installments of $100 each, with a final payment of $41.50. The note also provided for late charges of 5% of the unpaid installment amount, or $15, whichever was lesser.
Subsequently, in January of 1986, in a matter not related to this case, the plaintiff was arrested and incarcerated by the authorities in Ouachita Parish. However, while incarcerated, he made arrangements for his girlfriend at that time (now his wife), Dorothy Cook, to keep the car and to continue to make the payments. The evidence demonstrated that she made sporadic payments on the car through May of 1987.
On August 4, 1987, because Mr. Cook was in default, the defendants sent their collection agent to Mrs. Cook's residence and the car was repossessed. At the time of the seizure, Mrs. Cook told the defendants' agent that she could pay $100. However, the defendants' representative said that he had been instructed to take the car and that she was to remove her personal items from the vehicle. Inasmuch as no suit had been filed, the agent did not give Mrs. Cook any legal documents authorizing the seizure.
The defendants' records reflected that at the time of the repossession, the balance owed on the vehicle was $616.50. This sum included $125 in late charges. Mrs. Cook was without a vehicle until Mr. Cook's release from jail in January, 1988. They then bought another car for $1,500.
On August 1, 1988, Mr. and Mrs. Cook filed suit against the defendants, seeking $5,850 in damages. They asserted that they had fully paid for the vehicle and that the obligation had therefore been extinguished. They further asserted that the defendants failed to follow proper procedures for seizing the vehicle. They sought damages of $2,850 for the car's purchase price, $1,000 for violation of the Truth-In-Lending Act and $2,000 for inconvenience and embarrassment.
In their answer to the suit, the defendants contended that the car had been returned by voluntary release. They also filed exceptions of no right of action and no cause of action. In response to the defendants' exceptions, the plaintiffs filed a supplemental and amending petition, claiming, among other things, that Mr. Cook had purchased the car as a community obligation *466 and that the defendants had resold the repossessed vehicle.
On February 2, 1985, trial on the merits was held in Monroe City Court. The two previously mentioned exceptions and an oral exception of prescription made by the defendants prior to the commencement of trial were referred to the merits.
During the trial, it was revealed that Mrs. Cook and the plaintiff were not married at the time of the Lincoln's purchase or at the time of its seizure. (The Cooks were married on September 7, 1987). Consequently, plaintiff's counsel made an oral motion to dismiss all of Mrs. Cook's claims because no community property regime existed between Mr. and Mrs. Cook at the time of the contract.
On December 28, 1989, the trial court rendered oral reasons for judgment. The trial court found that a balance was due and that the seizure was justified. The trial court further found that the evidence established adequate disclosure under the federal regulations. It therefore dismissed the plaintiff's demands at plaintiff's cost. Judgment in conformity with this opinion was signed on January 19, 1990.
The plaintiff appeals from this judgment. The plaintiff assigns as error the following: (1) the trial court erred in finding that there was a debt owed on the Lincoln; (2) the trial court erred in not holding that the defendants wrongfully seized the car; and (3) the trial court erred in failing to award damages to the plaintiff.
The appellees filed no brief.

THE AMOUNT OF THE DEBT
The plaintiff argues that the trial court erred in failing to find that the debt owed on the Lincoln was extinguished by payment in full. Specifically, he contends that the $500 payment made on October 17, 1985 should have been credited against the balance owed on the Lincoln. Plaintiff contends that if this $500 payment had been properly credited against the Lincoln account, that amount, plus the payments he and Mrs. Cook subsequently made, would have extinguished the debt in full.
The $500 receipt reflected that it was a payment on the Lincoln. However, this receipt was simply filled out in error. The sales documents indicate that the purchase of the Lincoln occurred on October 12, 1985. The $500 payment was made on October 17, 1985. The defendants' records clearly indicate that a balance of $422 was owed on the Buick at the time of the tradein, but it was paid off on October 17, 1985. Obviously, $422 of the $500 cash payment was used to pay off the Buick account. The remaining $78 was applied to the purchase of the Lincoln, as shown on the bill of sale admitted into evidence.
The record shows that the plaintiff or his future wife paid a total of $950 on the balance of $1,441.50.[2] Thus, at the time of the seizure, the plaintiff owed the sum of $491.50.
The defendants' records also show an assessment of $125 in late charges. (On three occasions a late charge of $25 was assessed, while on one occasion a late charge of $50 was assessed.) However, the promissory note provided for delinquency charges of 5% of the unpaid installment amount, or $15, whichever was lesser. The lesser amount would be 5% of the $100 installment amount, or $5. Therefore, under the terms of the promissory note, only a total of $20 in late charges was authorized. Thus, the total balance at the time of seizure should have been $511.50.
The trial court's finding that a balance was due at the time of the seizure was correct because the debt had not been extinguished by payment in full. Consequently, we find no merit in this assignment of error.

*467 ILLEGAL SEIZURE
The plaintiff contends that the trial court erroneously concluded that no illegal seizure of the Lincoln occurred. We find merit in this assignment of error.
It is well settled that when goods are repossessed without judicial process the consent of the owner must be shown by the seizing creditor in order to avoid legal liability. Lee v. Lewis, 339 So.2d 513 (La. App. 2d Cir.1976); Samaniego v. Horseless Carriage, Inc., 350 So.2d 193 (La.App. 2d Cir.1977), writ refused 352 So.2d 240 (La. 1977); Moore v. Goodyear Tire and Rubber Company, 364 So.2d 630 (La.App. 2d Cir.1978). A default in payments by the plaintiff does not justify the repossession by the defendants' agent without resort to proper legal process unless the plaintiff voluntarily consents to the method of repossession. Lee, supra. This consent must be proved as any other fact tending to show a state of mind. Where it is not expressly given, orally or in writing, it may be inferred from actions which, when considered with one's words and all other circumstances, can lead to no other reasonable conclusion. Samaniego, supra. But if the circumstances and words do not strongly imply consent to reasonable minds, it shall not be found. Mere inaction or the absence of protests to the taking does not imply consent. Lee, supra, Samaniego, supra. Furthermore, the consent given to the seizure must be that of the debtor.
In the present case, the defendants contend that Mrs. Cook voluntarily surrendered the car. They also produced a "voluntary release", allegedly signed by the plaintiff. However, our review of the record reveals that the vehicle was not voluntarily surrendered.
The vehicle was not voluntarily released by Mrs. Cook. The defendants' representative simply appeared at her residence, told her that he was removing the vehicle and directed her to remove her possessions from the car. Mrs. Cook's failure to resist the repossession cannot be construed as consent.
We also note that the plaintiff and his wife were not married until September 7, 1987, a month after the seizure on August 4, 1987. Consequently, at the time of the seizure, there was no legal relationship between them. Mrs. Cook had no more authority to consent to the repossession of the car than the debtor's sister-in-law in Moore, supra. Even if the Cook couple had been married at the time of the seizure, it is doubtful that the wife could have consented to the seizure of the husband's separate property.
The plaintiff, Mr. Cook, was the only person who could have consented to the seizure. The record demonstrates that he did not consent. The defendants produced an undated "voluntary release" form, which did not contain the description of any vehicle and which the plaintiff denied signing. However, even Mr. Spillers, Jr., acknowledged that it could not have been signed by the plaintiff who was in jail at the time of the Lincoln's seizure.
Under all these circumstances, we conclude that the repossession was a wrongful seizure. Accordingly, the judgment of the trial court on this issue must be reversed.

DAMAGES
The measure of damages for the wrongful taking of a movable is the value of the property seized. Where the defendant holds a security interest in the seized property, the value of this seized property corresponds with the equitable interest the plaintiff has acquired in it. Samaniego, supra.
In the present case, since there is no evidence of the market value of the car at the time of the seizure, we compute the plaintiff's equitable interest as the amount paid on the purchase price. Samaniego, supra. The plaintiff initially paid $78 in cash, received a $1,500 trade-in value on the Buick, and paid $950 in installment payments (less $20 for late charges), for a total of $2,508. Thus, the plaintiff is entitled to $2,508 for his equitable interest in the car. The plaintiff's indebtedness to the defendants is cancelled, and the plaintiff is *468 directed to execute any documents necessary to transfer title to the defendants.
General damages may be awarded for the plaintiff's embarrassment, humiliation, or inconvenience as a result of the wrongful seizure. Lee, supra. At the time of the seizure, the plaintiff was incarcerated. Thus, he was removed from the actual seizure and suffered little or no embarrassment. However, upon his release, he was required to purchase a new vehicle for transportation. We award nominal general damages of $200.
Furthermore, we find the plaintiff is entitled to recover attorney fees and costs under LSA-R.S. 51:1405(A) and 1409(A), the Unfair Trade Practices and Consumer Protection Law.[3] In Moore, supra, this court applied these statutes when the defendant sent its agents to the plaintiff's house to repossess a television set and a sewing machine. The plaintiff, who had purchased the items on credit and fallen behind in his payments, was out of the country. His sister-in-law, who lived next door, told the agents that the plaintiff's house was open and they could take the items. The court found that the defendants' actions in entering the plaintiff's house and taking his property without his knowledge or consent amounted to an unfair trade act or practice. Since damages had been awarded to the plaintiff, an award of reasonable attorney fees and costs was mandated by LSA-R.S. 51:1409(A).[4]
Therefore, under the facts of this case, the plaintiff is entitled to reasonable attorney fees, which we fix in the amount of $750.

CONCLUSION
For the reasons assigned above, the judgment of the trial court is reversed and set aside, and there is judgment in favor of the plaintiff as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, Eddie Cook, and against the defendants, Harold Spillers, and H & L Auto Sales, in the full sum of $2,708, plus interest thereon at the legal rate, from the date of judicial demand, until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of the plaintiff and against the defendants for attorney fees in the amount of $750. Furthermore, all costs of these proceedings are assessed against the defendants.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the plaintiff execute any documents necessary to transfer title in the 1978 Lincoln to the defendants.
REVERSED AND RENDERED.
NOTES
[1] The plaintiff testified that his surname was "Cooks." However, he further testified that he did not always affix the "s" to the end. Inasmuch as all of his pleadings are styled "Cook", we will use that spelling in the interest of clarity.
[2] The receipts admitted at trial show the following payments:

March 5, 1986 200.00
June 9, 1986 100.00
October 20, 1986 100.00
November 10, 1986 150.00
December 8, 1986 100.00
December 15, 1986 50.00
February 2, 1987 100.00
May 16, 1987 150.00
 _______
Total $950.00

[3] LSA-R.S. 51:1405(A) provides, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

LSA-R.S. 51:1409(A) provides, in pertinent part:
Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages.... In the event that damages are awarded under the Section, the court shall award to the person bringing such action reasonable attorney's fees and costs....
[4] See and compare Ford Motor Credit Company v. Corbello, 482 So.2d 203 (La.App. 3rd Cir. 1986), which declined to follow the Moore rationale on the issue of attorney fees.