hGREMILLION, Judge.
In this case, the plaintiff, Jimmy Lopez, Jr., appeals the judgment of the trial court granting an exception of prescription in favor of the defendant, Barbara DeBlane Lopez, and dismissing his suit to disavow paternity. For the following reasons, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
On February 22, 1999, Jimmy Lopez, Jr., filed suit to disavow paternity of Jacob S. Lopez, who was born, but not conceived, of the marriage between he and Barbara based on the results of a paternity test which showed that he could not have been the father of Jacob. Jimmy and Barbara were married in September 1989, and Jacob was born on February 6,1990. Jimmy claimed that Barbara was in bad faith and intentionally deceived him into believing he was the father. Thus, he urged that the exception found in La.Civ.Code art. 188 applied.
Jacob answered the petition requesting that the suit be dismissed. Barbara filed an exception of prescription, peremption, and/or no cause of action, stating that she was not in bad faith and that Jimmy’s action had prescribed. Following a hearing on the matter, the trial court granted the exception, and dismissed the suit, finding that Barbara was not in bad faith nor did she engage in deceit. Jimmy timely filed his motion and order for this appeal.
ISSUES
On appeal, Jimmy assigns as error:
1. The trial court’s finding that Barbara did not act in bad faith in making a false claim of fatherhood.
|;>,2. The trial court’s finding that the time limits of La.Civ.Code art. 189 applied when bad faith is proven under La.Civ.Code art. 188.
DISCUSSION
We first address whether the trial court committed manifest error in holding that Barbara was not in bad faith. A court of appeal may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). Though an appellate court may feel its own evaluations and inferences are more reasonable than the trial court’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Id.
Jimmy argues that the exception to Article 188 applies in this case. It reads in pertinent part:
*366 A man who marries a pregnant woman and who knows that she is pregnant at the time of the marriage cannot disavow the paternity of such child born of such pregnancy. However, if the woman has acted in bad faith and has made a false claim of fatherhood to the marrying spouse, he may disavow paternity provided that he proves such bad faith on the part of the mother, and he proves by a preponderance of the evidence that the child is not his.
The trial court found that Barbara did not act in bad faith or make a false claim of fatherhood. Only Barbara and Jimmy testified at trial. Barbara admitted that she had sexual relations with another man during a period when she and Jimmy had broken off their relationship. She further testified that she did not tell Jimmy that she was pregnant; rather, he came to her place of employment on her birthday and asked her to marry him because he had heard that she was pregnant. She stated that she did not tell him that she had slept with another man, nor did he ask. Further, she testified |3that she thought the baby was Jimmy’s because she had slept with him on many more occasions than she had with the other man, and that she was shocked to find out that the paternity test indicated that he could not be the father.
Initially, Jimmy testified that he was told by someone other than Barbara that she was pregnant. He recalled going to her house to talk to her about the pregnancy. He stated that she told him the baby was his. Jimmy also stated that Barbara did not force him to marry her. He later testified that Barbara was the first person to tell him of the pregnancy and that he never asked her if she had been engaging in sexual relations with anyone else. Jimmy further testified that he paid child support for Jacob and Dillon (a son born later of the marriage) for six years, a period during which he had suspicions, because of rumors he had heard, that Jacob was not his. Further, he stated that he filed the disavowal action because of Barbara’s request for an increase in child support.
The trial court found there was no evidence to suggest that Barbara knew the child was not Jimmy’s or that she was in bad faith. Though Article 188 does not define “bad faith” in this context, we rely on Black’s Law DictionaRY, which defines “bad faith” as a design to mislead or deceive another, not prompted by an honest mistake, but by some interested or sinister motive, and that it implies the conscious doing of a wrong because of a dishonest purpose or moral obliquity. See Black’s Law DictionaRY 139 (6th ed.1990). We agree with the trial court that Jimmy did not meet his burden of proving bad faith on the part of Barbara. He directs us to no facts to support this conclusion, and we agree with the trial court’s finding that Barbara believed that Jimmy was Jacob’s father. Furthermore, the trial court is |4in a better position to make credibility determinations by examining variations in demeanor and tone of voice of the witnesses. Rosell, 549 So.2d at 844. We do not find Barbara’s testimony inconsistent or implausible; thus, we are restrained from finding manifest error based on the trial court’s decision to credit Barbara’s testimony. Id.
Because we have found the exception in Article 188 inapplicable in this case, Jimmy’s argument that his action has not prescribed must fail. He cannot maintain his action to disavow paternity because he married Barbara knowing that she was pregnant, and he failed to prove Barbara’s bad faith in making a false claim of fatherhood. As we have noted, Article 188 clearly states that “[a] man who marries a pregnant woman and who knows that she is pregnant at the time of the marriage cannot disavow the paternity of such child born of such pregnancy.” Furthermore, even assuming Article 189 applies, it requires that a suit for disavowal of paternity be brought within one year after the husband learned or should have learned of *367 the birth of the child.[1] Jimmy knew of the birth of Jacob Lopez on February 6, 1990, and was married to Barbara at the time. Thus, his suit in February 1999 is untimely, and the trial court’s granting of the exception of prescription and dismissal of the suit was proper.
CONCLUSION
Jimmy Lopez, Jr., failed to prove that Barbara DeBlanc Lopez was in | sbad faith or that she made a false claim of fatherhood. Thus, in accordance with La.Civ. Code art. 188, he cannot disavow the paternity of the child born of that pregnancy. Furthermore, even if he had a legal right of action, it has long since prescribed under La.Civ.Code art. 189. Thus, the exception of prescription was properly granted and the dismissal of Jimmy’s suit to disavow is affirmed. The costs of this appeal are taxed to Jimmy.
AFFIRMED.

. La.Civ.Code art. 189 has been revised. Its application is retroactive. The former article read: A suit for disavowal of paternity must be filed within one hundred eighty days after the husband learned or should have learned of the birth of the child; but, if the husband for reasons beyond his control is not able to file suit timely, then the time for filing suit shall be suspended during the period of such inability.