# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-548


**COURTNEY MARKS**

**VERSUS**

**MOTOR CITY, J.P. MARKET MANAGEMENT, LLC, ET AL.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20162808
HONORABLE EDWARD B. BROUSSARD, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**SHANNON J. GREMILLION**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*


Court composed of Sylvia R. Cooks, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.


**AFFIRMED.**

**Christopher J. Piasecki**
**Jordan T. Precht**
**Davidson, Meaux, Sonnier, McElligot, Fontenot, Gideon & Edwards**
**810 South Buchanan Street**
**Lafayette, LA 70501**
**(337) 237-1660**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
 **J.P. Market Management, LLC**
 **Motor City**
 **Jean Paul Guidry**

**Charlotte M. Washington**
**Washington Law Office, LLC**
**124 West Washington Street, Suite C**
**New Iberia, LA 70560**
**(337) 306-2367**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
 **Courtney Marks**

**GREMILLION, Judge.**

The plaintiff-appellant, Courtney Marks, appeals the trial court's judgment in her favor relating to the repossession of a vehicle she purchased from the defendants for failure to award treble damages under the Louisiana Unfair Trade Practices Act (LUTPA). The defendants-appellants, J.P. Market Management, LLC d/b/a/ Motor City (Motor City) and Jean Paul Guidry (Guidry) also appeal the award to Marks. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The trial court accurately summed up the following undisputed facts in its written reasons for judgment:

> Courtney Marks brought this action to recover damages for the wrongful repossession of a 2009 Acura Automobile that she purchased from J.P. Market Management, L.L.C., d/b/a Motor City (hereinafter referred to as "Motor City"). Plaintiff purchased the vehicle on March 15, 2016 for the sum of $13,990.00, which she satisfied by trading in a 2007 BMW automobile valued at $6,500.00 (less a payoff balance of $1,515.83), making a $2,500.00 cash down payment, and executing a Retail Installment Contract and Security Agreement for the balance (including taxes and fees) of $7,484.47. The installment contract was subsequently assigned by Motor City to Westlake Financial Services.

> Under the terms of the installment contract, plaintiff was to make 36 monthly payments of $294.90 beginning on April 14, 2016. However, plaintiff did not submit any payment until May 16, 2016, the day after the second payment was due. On that date, she tendered a personal check in the amount of $604.55 to Westlake Financial Services, but the check was subsequently returned by her bank due to insufficient funds in her account. On May 16, 2016, Westlake Financial Services re-assigned the installment contract to Motor City.

> Motor City engaged the services of Hazelwood Towing/Recovery & Investigative Services, L.L.C. to repossess the 2009 Acura. On May 19, 2016, Chad Hazelwood, appeared at plaintiff's residence to take possession of the vehicle. Upon learning of his intent, plaintiff facilitated a telephone conversation between Chad Hazelwood and her attorney, Peggy Garris . . . Chad Hazelwood called Jean Paul Guidry, a member of J.P. Market Management, L.LC., to inform him of Ms. Garris' statements and ascertain whether he wanted to go through with the repossession. Mr. Guidry instructed Mr. Hazelwood to tow the vehicle, and he did so after plaintiff had removed her personal possessions. Plaintiff declined to sign a form presented by

Chad Hazelwood indicating that she was voluntarily surrendering the vehicle.

Marks filed a petition for damages in May 2016. Marks subsequently filed several motions for summary judgment which were denied by the trial court because it found there was a genuine issue of fact whether Marks protested the repossession. Following a trial in March 2018, the trial court found that Marks did protest the repossession resulting in a "breach of the peace," and an illegal repossession occurred based on the notion that extrajudicial repossession can only occur if there is no breach of the peace pursuant to La.R.S. 6:966(B). The trial court awarded Marks $12,734.07, which included the value of her trade-in less the balance she owed ($4,984.07), her cash down payment ($2,500.00), $500.00 in general damages, $2,250.00 for lost wages, and $2,500.00 for attorney fees, but found that she was not entitled to treble damages pursuant to La.R.S. 51:1409. Marks appealed. Motor City and Guidry answered the appeal and also assign errors.

## ASSIGNMENTS OF ERROR

Marks assigns as error:

1. The trial court erred in ruling that Courtney Marks was not entitled to treble damages under LUTPA.

2. The trial court erred in ruling that the Attorney General was not put on notice.

3. The trial court erred in ruling that Motor City was required notice before the [sic] engaging in the acts complained of by Marks.

4. The trial court erred in casting the cost to [sic] the two motions for summary judgment to Courtney Marks.

5. The trial court erred in awarding $2,500.00 in attorney fees.

6. The trial court erred in not awarding cost[s] to the claimant.

Motor City assigns as error:

2

1. The Court erred in finding that Appellee, J.P. Market Management, LLC d/b/a Motor City, and another Defendant, Hazelwood Recovery & Investigative Services were solidary obligors;

2. The Court erred in finding that sufficient evidence was presented to support Appellant's, Courtney Marks, contention that she objected to the recovery of the vehicle undertaken by Hazelwood Recovery & Investigative Services, and erred that a breach of the peace occurred pursuant to the provisions of La.R.S. 6:965;

3. The Court erred in finding that Appellee, J.P. Market Management, LLC d/b/a Motor City was/is liable for the action(s) of its independent contractor, Hazelwood Recovery & Investigative Services; and

4. The Court erred in finding that Appellee, J.P. Market Management, LLC d/b/a/ Motor City, and another Defendant, Hazelwood Recovery & Investigative Services were/are liable unto Appellant, Courtney Marks in the full sum of TWELVE THOUSAND SEVEN HUNDRED THIRTY FOUR AND 07/100 DOLLARS ($12,734.07).

## DISCUSSION

### *Standard of Review*

The supreme court summarized the manifest error standard of review:

This court has announced a two-part test for the reversal of a factfinder's determinations: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). *See Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987). This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's findings. *See id.* The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. *See id.*

*Lobell v. Rosenberg*, 15-247, p. 10 (La. 10/14/15), 186 So.3d 83, 90.

A trial court is in a better position to make credibility determinations, as it has the benefit of examining the nuances of a witness's testimony and demeanor. *Lopez v. Lopez*, 00-660 (La.App. 3 Cir. 11/2/00), 772 So.2d 364.

3

*Breach of the Peace*

Louisiana Revised Statutes 6:966 permits the repossession of motor vehicles upon default[1] by the debtor without judicial process if it can be accomplished "without a breach of the peace." Louisiana Revised Statutes 6:965 defines "breach of peace" as follows: "Oral protest by a debtor to the repossessor against repossession prior to the repossessor seizing control of the collateral shall constitute a breach of the peace by the repossessor." Whether a breach of the peace has occurred is a question of fact subject to manifest error review. *See Cook v. Spillers*, 574 So.2d 464 (La.App. 2 Cir. 1991). The trial court found that unquestionably there was a breach of the peace because Marks' attorney disputed the taking over the phone. Motor City argues that La.R.S. 6:965 requires protest by the debtor, not the debtor's representative, because there is no way that a repossessor can verify with whom he is speaking on the phone.

At trial, Marks testified about the day of the repossession. She said that a representative from Hazelwood Recovery & Investigative Services (Hazelwood Recovery) arrived to repossess the car. Marks testified that she immediately called Peggy Garris, a lawyer, and handed the phone to the Hazelwood Recovery representative. She testified that, thereafter, he called the dealership and was told to repossess the car. Marks testified that she was employed with the *Daily Iberian* as a newspaper deliverer but she lost her job once the car was repossessed. She did not recall giving permission for the car to be taken or removing any items from the vehicle.

---

[1] There is no dispute that Marks was in "default" as she had failed to make two consecutive payments for the vehicle on the due date. *See* La.R.S. 6:965.

Chad Hazelwood (Hazelwood) of Hazelwood Recovery testified that after talking to the person on the phone, he called Motor City and spoke with Guidry, who told him to remove the vehicle. He stated that Marks did not sign the form which would indicate that she removed her items from the vehicle and that she voluntarily consented to the removal of the vehicle. Hazelwood testified, though, that Marks never said to not take the vehicle. Based on his ten years in the industry, Hazelwood testified that he did not feel the taking of the vehicle was involuntary.

Peggy Garris testified that she told Hazelwood "[Marks] made a payment and he should not take the car." She further stated that she told him, "if he repossessed the car that day, I would have a lawsuit filed by twelve noon." She then said that she faxed a letter to Guidry informing him that she was going to report him to the Attorney General for unfair trade practices and that she did just that; filed suit and notified the Attorney General.

Guidry, owner of Motor City, testified that he hired Hazelwood Recovery to repossess and recover the vehicle.

In its written reasons for judgment, the trial court stated:

> Defense counsel's argument that there was no protest because it was not voiced by plaintiff is unsupportable. The evidence left no doubt that Ms. Garris was speaking on behalf of her client and that Chad Hazelwood had informed Jean Paul Guidry of that fact. Plaintiff's position that she objected to the taking of the automobile could not have been any clearer.

We find no manifest error in the trial court's finding, as it was reasonably supported by the record. The trial court clearly believed that Marks called her attorney who, on behalf of her client, protested the taking of the vehicle thereby breaching the peace. Although we are sympathetic to the defendants' arguments, we are constrained by the law that allows a party to prevent the repossession of a car

that she refuses to pay for. Accordingly, Motor City's assignment of error number two assignment is without merit.

***Treble Damages***

The trial court found that Marks was not entitled to treble damages because she produced no evidence to establish service on the Attorney General or notice to the defendants. Further, the trial court found that Motor City would have had to be put on notice *before* the wrongful seizure occurred in order to be liable for treble damages.

Louisiana Revised Statutes 51:1409(A) states (emphasis added):

> Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages. If the court finds the unfair or deceptive method, act, or practice was knowingly used, *after being put on notice by the attorney general*, the court shall award three times the actual damages sustained. In the event that damages are awarded under this Section, the court shall award to the person bringing such action reasonable attorney fees and costs. Upon a finding by the court that an action under this Section was groundless and brought in bad faith or for purposes of harassment, the court may award to the defendant reasonable attorney fees and costs.

We find no error in the trial court's finding that treble damages were not warranted, as there was no evidence in the record that any of the defendants had been put on notice by the attorney general. The repossession complained of occurred long before the attorney general was notified of the defendants' actions and certainly before any notice was given to the defendants by the attorney general that they were committing unfair trade practices. In her brief, Marks claims that Garris "testified that she received a carbon copy of the letter sent by the Attorney General to Motor City, putting them on notice that if they did not cease the activity complained of, Ms. Marks would be entitled to treble damages if successful in her civil action." As noted by the defendants, Marks does not set forth one single record-page reference

6

in her brief, in violation of Uniform Rules–Court of Appeal, Rule 2-12.4. We have read Garris's testimony and find no evidence whatsoever to substantiate the above claim. Marks's assignments of error one through three are without merit.

*Attorney Fees*

In assignment of error five, Marks argues that the trial court's award of $2,500.00 in attorney fees was unreasonable. We disagree. The trial court provided the following reasons for its award of attorney fees:

> Plaintiff also failed to submit any evidence to support her claim for attorney's fees. . . . Despite having been provided oral and written reasons for the denial of plaintiff's first motion for partial summary judgment, her current attorney filed a second motion for a partial summary judgment without curing the deficiencies in the evidence. After the second motion for a partial summary judgment was denied, this matter was set for the trial. Plaintiff's counsel made a brief appearance at the taking of one trial deposition. She also made a brief appearance at the trial, where she presented very little evidence in support of plaintiff's claims for damages. Throughout these proceedings, including her post-trial memorandum, plaintiff's counsel has advanced arguments that the Court found to be erroneous and of no assistance in resolving plaintiff's claims. In light of these facts, the Court will award attorney's fees in the amount of $2,500.00.

In her brief, Marks makes the following remarks regarding attorney fees:

> In this case, Courtney Marks is entitled to an amount in attorney fees and costs equal to that of her liability to her attorney/s[sic] pursuant to her contingency contract. . . .

> As a practicing attorney with over seven (7) years of experience as is the case here, an average median hourly rate ranges between $200 and $250 per hour. However, Ms. Marks contracted with her attorney/s [sic] to handle this matter on a contingency basis. The attorney in this matter: has spent approximately two years preparing this case for trial, has made at least two court appearances in this matter, excluding trial; have argued two motions for summary judgment; have conducted hours of pre-trial and post-trial research; have drafted several motions and memorandums in connection with this matter; obtained a favorable decision after a trial on the merits; and have expended usual costs in preparing a case for trial, including but not limited to, the cost of depositions, postage, conference calls, interviewing of witness(es), travel and lodging expenses and paralegal costs. Because the trial court did not take up argument or evidence on attorney fees and costs, the court should have awarded attorney fees and costs that were reasonable

7

under the circumstances of this case or in the alternative, the court should have awarded Ms. Marks attorney fees on a contingency basis.

In the conclusion of her appellate brief, she requests remand for the trial court to "take up evidence on attorney fees and costs or alternatively, awarding her attorney fees that are contingent at 33.1/3% to her recovery and consistent with contractual obligation for attorney fees, and for costs that are consistent with her contractual obligation for costs associated with these proceedings." Based on the trial court's factual findings and the lack of any evidence to support Marks' counsel's request, we find no error in the trial court's award of $2,500.00 in attorney fees. This assignment of error is without merit.

*Costs*

In assignments of error four and six, Marks argues that the trial court erred in casting her with the costs relating to two summary judgment motions she filed and in not awarding her the costs associated with prosecuting her case. Given the trial court's reasons regarding how it arrived at the amount of attorney fees awarded to Marks, we find no error in its assessment of costs to the plaintiff for the summary judgment filings. As to Marks' assertion that the trial court erred in not awarding her costs, we find this claim to be erroneous. In its judgment, the trial court clearly cast the defendants with "all costs of the proceedings." These assignments of error are without merit.

*Solidary Obligors*

Louisiana Civil Code Article 2324(A) provides that, "He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act." In order for a conspiracy to exist there must be agreement to commit the illegal act, the commission of the act, and agreement as to the result of the act. *Curole v. Delcambre*, 16-550 (La.App. 3 Cir.

8

8/2/17), 224 So.3d 1074, *writs denied*, 17-1506, 14-1491 (La. 1/9/18), 231 So.3d 652, 653.

> Louisiana Civil Code Article 2324(A) requires a meeting of the minds or collusion between the parties for the purpose of committing wrongdoing. Evidence of such a conspiracy can be actual knowledge of both parties *or overt actions with another*, or *can be inferred from the knowledge of the alleged co-conspirator of the impropriety of the actions taken by the other co-conspirator.*

*Id.* at 1082.

The trial court stated that the "evidence clearly established that the repossession of the automobile was an intentional act undertaken in concert by Motor City and the Hazelwood defendants." It went on to cast Motor City with the full judgment because Motor City failed to plead extinguishment of the debt as an affirmative defense. We find no manifest error in that finding. Hazelwood called Guidry after the phone conversation with Garris in order to determine if he should go ahead with the repossession in spite of Garris's protests on behalf of her client. Accordingly, both Hazelwood Recovery and Motor City are solidarily liable for the repossession resulting in a breach of the peace. We find no merit to Motor City and Guidry's first assignment of error.

### *Vicarious Liability/Independent Contractors*

In the same vein, Motor City argues that it is not vicariously liable for Hazelwood Recovery's actions because Motor City and Hazelwood Recovery are independent businesses with no control over each other. A finding of vicarious liability is not necessary in order to find Motor City and Hazelwood Recovery to be solidary obligors under the facts set forth above. Nor do we find anywhere in the record where the trial court determined Motor City was vicariously liable for the acts of Hazelwood Recovery. Rather, the trial court found Hazelwood Recovery and Motor City worked in concert to repossess the car as Hazelwood did not effectuate

the repossession until after he called Guidry to confirm he should do so under the particular facts of this case. Although Hazelwood was the party present on the scene who ultimately carried out the repossession, Guidry's physical presence at the scene was not required for a conspiracy to exist. Accordingly, we find no error in the trial court's finding that these parties are solidarily liable for the repossession. Motor City and Guidry's third assignment of error lacks merit.

*Attorney Fees and Costs on Appeal*

We award Marks' counsel $2,500.00 for work done on appeal. All costs associated with the appeal are assessed to the defendants.

## CONCLUSION

The judgment of the trial court awarding $12,734.07 to the plaintiff-appellant, Courtney Marks, is affirmed. Marks is awarded $2,500.00 for attorney fees for work performed on appeal. All costs of this appeal are assessed against the defendants-appellants, J.P. Market Management, LLC d/b/a/ Motor City.

**AFFIRMED.**