PAUL A. BONIN, Judge.
| Kenneth H. Lobell, the plaintiff in the present case, acquired in 1997 the balance of several pre-existing leases. One of these was a sixty-year lease of several parcels of land, a three-story office building of approximately 44,000 square feet, and a parking structure all located at 2025 Canal Street in New Orleans. Relations between Mr. Lobell and the lessors deteriorated in the wake of Hurricane Katrina. These lessors are the heirs of Simon and Herman H. Rosenberg, the two original lessors. The Rosenberg heirs transferred their individual rights under the 1957 lease to 2025 Canal St., L.L.C., which was formed in 2008 shortly before Mr. Lobell filed his initial petition.[1]
On December 28, 2007, some of the Rosenberg heirs, acting through counsel, addressed a letter to Mr. Lobell alleging that he had defaulted on the lease in several respects and served notice that they were electing to terminate the lease. Mr. Lobell subsequently sued the Rosenberg heirs and 2025 Canal for damages, claiming anticipatory breach of contract, and wrongful eviction because they failed Uto afford him the lease’s thirty-day cure period. 2025 Canal, on the other hand, intervened, named Mr. Lobell and K.H.L. Canal as defendants-in-intervention, and argued that Mr. Lobell’s numerous defaults entitled it to a termination of the lease, and an award of back rent and damages. Mr. Lobell responded that the December 28, 2007 letter could not serve as a lawful condition precedent to the termination of the lease in 2025 Canal’s favor because it did not specifically afford him the cure period set out in the lease. After a four-day bench trial, the trial judge ruled in favor of 2025 Canal and the Rosenberg heirs, dismissed Mr. Lobell’s claims for damages, terminated the lease, and awarded 2025 Canal building restoration costs, past unpaid rent, attorney’s fees, and reimbursement for monies spent by the Rosenberg heirs on the payment of ad valorem taxes.
Mr. Lobell now argues that the trial judge erred when he: 1) found that Rosenberg heirs’ default letters did not constitute anticipatory breaches of contract by the heirs and 2025 Canal; 2) concluded *878 that the Rosenberg heirs and 2025 Canal did not terminate the lease and -wrongfully evict him from the property prior to the end of the leases’ term; 8) failed to award him damages for breach of the lease; 4) terminated the lease in favor of 2025 Canal, and, 5) awarded 2025 Canal too much money for restoration costs.
Because the Rosenberg heirs’ default letters failed to specifically afford Mr. Lo-bell a cure period, they failed to comply with the terms of the lease. Because the Rosenberg heirs did not comply with the lease provisions, the trial court erred when it granted 2025 Canal’s request to terminate the lease and evict Mr. Lobell. |aWe must, accordingly, vacate that portion of the judgment which terminated the lease in favor of 2025 Canal and awarded it building restoration costs, past unpaid rent, attorney’s fees, and reimbursement for monies spent by the Rosenberg heirs on the payment of ad valorem taxes. We remand these claims to the trial court for further proceedings.
On the other hand, we conclude that the trial judge was not clearly wrong in finding that the Rosenberg heirs’ correspondence neither terminated the lease nor deprived Mr. Lobell of his right to attempt to cure his defaults. We, accordingly, conclude that the trial judge did not err in concluding that the Rosenberg heirs and 2025 Canal did not commit anticipatory breaches of the lease or wrongfully evict Mr. Lobell. Because we affirm these findings, we likewise conclude that the trial judge properly refused to award Mr. Lo-bell damages. We now explain our opinion in more detail.
I
We first summarize this matter’s facts and procedural history. At the outset we examine briefly this matter’s contractual history and set out the relevant lease provisions. We then briefly examine the deterioration of the parties’ business relationship in the wake of Hurricane Katrina. Finally, we discuss this matter’s procedural history, and the trial court’s judgment.
A
The record establishes that Simon and Herman H. Rosenberg leased several parcels of property, which are located in the city block bounded by Canal, |4Iberville, North Johnson, and North Prieur streets in New Orleans, Louisiana, to Eagle Enterprises, Inc., on January 25, 1957, for a term of fifty years. The lease was amended several times in the 1950’s, and subsequently assigned and transferred several times. On December 3, 1997, E.E.W. Properties, Ltd., an intermediate lessee, transferred and assigned its lease interest to Mr. Lobell.[2] On May 4, 1998, Mr. Lo-bell contributed his interest in the property to K.H.L. Canal, L.L.C., by Act of Contribution of Property.[3] The Rosenberg heirs were not asked to consent to *879 these various transfers, as their consent was not required under the original lease or its subsequent amendments.
In connection with his acquisition of the lease interest, Mr. Lobell borrowed $600,000.00 in 1998 from Hibernia National Bank[4], secured by a Multiple Indebtedness Mortgage, and granted a mortgage in favor of Hibernia in the lease and leasehold improvements. In order to accommodate Hibernia’s desire to subordinate the leaseholders’ interests to Hibernia’s mortgage rights, some — but not all — of the Rosenberg heirs, along with Mr. Lobell and Hibernia, executed individual Consent and Agreements on June 25, 1998, which modified and |fisuperseded portions of the original amended lease.[5] In 2008, Mr. Lo-bell borrowed an additional $200,000.00 from Hibernia, secured by the same Multiple Indebtedness Mortgage.
Of significance to the present dispute, the 1957 lease, as amended, provides that Mr. Lobell was obligated to pay the Rosenbergs $2,083.83 in rent per month until the end of the lease in 2017. The lease also obligated Mr. Lobell to pay all ad valorem taxes and assessments levied on or against the premises. Mr. Lobell, moreover, was obligated to keep the buildings subject to the lease in good repair and condition. In the event the buildings on the property were damaged, the lease obligated Mr. Lobell to repair or rebuild the buildings at least to the “same general character” as existed before the loss within six months of the loss. Additionally, the 1957 lease required Mr. Lobell to maintain $400,000.00 in insurance on his leasehold interests and provided that “all policies issued ... are to be assigned to, and in case of loss or destruction be made payable to the Lessor ... and any and all moneys which Lessor shall receive by reason of any loss or destruction of the buildings or improvements is hereby constituted a trust fund, to be used for rebuilding of the buildings and improvements.”
The lease also afforded the Rosenbergs the option of bringing lease termination proceedings in the event of Mr. Lobell’s default with respect to the | (-.aforementioned provisions. On this point, the lease obligates the Rosenbergs to first provide Mr. Lobell with a notice of default and afford him a thirty-day cure period, or some other reasonable amount of time “if the default is one which cannot be cured within the said thirty (30) days.” In the event that Mr. Lobell fails to cure his defaults, the lease provides: “in any or either of such events, it shall and may be lawful for the Lessor, at his option, at or after the expiration of thirty (30) days previous notice in writing either to declare the rent for the whole unexpired term due and exigible or to declare this lease terminated.”
The 1998 Consent and Agreement also contains provisions 'germane to the resolution of this dispute. Specifically, the Consent and Agreement amends the 1957 lease to provide that Mr. Lobell must maintain $2,600,000.00 in insurance on the leased premises. Further, Hibernia, Mr. Lobell, and the individual consenting Rosenberg heirs agreed that if the building or improvements were damaged, but the damages did not constitute a total loss, *880 then “all insurance proceeds shall be placed in trust subject to the terms and conditions of the Lease, and the insurance proceeds will be used to restore immediately the building and leasehold improvements to the same condition or a better condition that existed prior to the loss so that the parties to this Agreement can preserve the terms of this Lease.”
B
Aside from the dates associated with the execution of the previously discussed leases and agreements, all pertinent facts to this case occurred in the aftermath of Hurricane Katrina. The buildings and their internal improvements 17suffered extensive water damage as a result of the storm. The ground floor suffered from flood damage and many of the windows were blown out, while water leaking from the roof seeped down through the remaining floors severely damaging the internal improvements and the lessees’ contents. Subsequently, the building’s copper wiring was stripped by vandals rendering the entire system inoperable. Mr. Lobell arranged for a new roof to be placed on the building after the storm, but it was subsequently discovered that the roof was improperly constructed, leading to further water damage to the improvements and contents. At trial, the parties stipulated that the building itself was not a total loss. The evidence, however, establishes that while the building itself is structurally sound, the interior of the building needs to be restored, the roof and windows replaced, and new improvements, including operable elevators, installed before it can be re-occupied by tenants. Mr. Lobell’s property and flood insurers estimated a combined replacement cost value of $3,230,126.72; whereas 2025 Canal’s expert, Scott Wolfe, testified that it would cost $7,642,149.11 to return the buildings to their pre-Katrina condition.
Like the leased property, the parties’ business relationship also deteriorated after the storm. Despite the Rosenberg heirs’ repeated requests, Mr. Lobell paid rent sporadically after the storm. While he made a few payments in 2006, the trial court concluded that Mr. Lobell owed 2025 Canal $193,749.69 in past-due rent. The Rosenberg heirs also discovered that Mr. Lobell did not pay tax assessments on the property between 2004 and 2013. Mr. Lo-bell attempted, as was his right | sunder the lease, to contest assessments, but he did not do so for every instance of non-paid tax. In fact, the City Of New Orleans sold the property to a third party in 2007 for non-payment of the 2004 and 2005 taxes. Some of the Rosenberg heirs, subsequently, spent $56,766.67 to redeem the property as well as pay the other outstanding tax bills.
The Rosenberg heirs also discovered that Mr. Lobell failed to maintain $2,600,000.00 in property insurance as provided for by the Consent and Agreement. Mr. Lobell, nevertheless, insured the property and accepted after the storm a combined total of $2,247,403.00 of proceeds based on his insurer’s actual cash value estimates.[6] None of these proceeds, however, were placed in a trust account pursuant to the Consent and Agreement. Mr. Lobell, nevertheless, spent $639,085.00 to pay off his debts to Hibernia, and reimbursed himself $571,932.00 for capital improvements, most of which were made to the building prior to Katrina. Mr. Lobell also claims to have spent the remainder of the proceeds on general expenses associated with the building, none of which were used to renovate the building, as well as on post-storm repair efforts. The trial judge, *881 however, rejected these later assertions finding that Mr. Lobell never intended to restore the property to its pre-Katrina condition.
On December 28, 2007, some of the Rosenberg heirs wrote, through counsel, to Mr. Lobell and noted that he was in default of the lease for failing to pay rent and ad valorem taxes, secure insurance on the building, and apply |flinsurance proceeds to the restoral of the improvements within the building to their pre-hurricane condition. Pointedly, the letter did not afford Mr. Lobell a thirty-day cure period, but instead elected bluntly to terminate the lease. Mr. Lobell, nevertheless, sought to pay a portion of the back rent.[7] The attorney for the Rosenberg heirs returned the payments on January 31, 2008, and asked Mr. Lobell to produce insurance documents and account for the receipt of insurance proceeds. The same Rosenberg heirs again wrote to Mr. Lobell on February 12, 2008, discussed his defaults with more detail, and again indicated that they desired to terminate the lease. The letter, however, did not specifically give him time to cure his defaults. Mr. Lobell, by way of correspondence dated February 19, 2008, nevertheless indicated his desire to proceed under the lease and place tenants within the building. Subsequently, on May 30, 2008 — approximately five months after the initial default letter — Mr. Lobell was served with a Five-Day Notice to Vacate arising out of an eviction proceeding filed in New Orleans’ First City Court.[8]
C
Mr. Lobell initiated the present matter by filing a petition for writ of possession and a possessory action against Cindy Rosenberg Denn, in her individual capacity, on March 27, 2008, more than two months before the First |inCity Court eviction proceeding. He subsequently amended his petition several times to add nine of the ten Rosenberg heirs and 2025 Canal as defendants.[9] Subsequent amendments withdrew his possessory claims, and substituted claims for anticipatory breach of contract, wrongful eviction, damages for loss of rental income, and damages for loss of value of improvements.
2025 Canal intervened on June 20, 2008, naming Mr. Lobell, K.H.L. Canal, and Capital One as defendants. 2025 Canal’s intervention alleges, among other things, that the Rosenberg heirs are the successors in interest to Simon and Herman H. Rosenberg and that each heir has transferred all of his interest in the subject property to 2025 Canal. 2025 Canal, as plaintiff-in-intervention, sought, among *882 other things, Mr. Lobell and K.H.L. Canal’s eviction from the premises, a money-judgment compensating it for the amounts spent by the Rosenberg heirs on ad valo-rem taxes, a money judgment compensating it for money spent on cleaning and securing the building, all rent due through the date of eviction, attorney’s fees, and costs.[10] 2025 Canal also sought a money judgment from Mr. Lobell, K.H.L. |T¡Canal, and Hibernia sufficient to restore the premises to its pre-Katrina state.[11]
Following trial, the trial judge signed a judgment bn August 22, 2013, which dismissed Mr. Lobell’s claims against the Rosenberg heirs and 2025 Canal. On the other hand, the trial judge granted 2025 Canal’s request to terminate the lease, and ordered Mr. Lobell and K.H.L. Canal to pay 2025 Canal: 1) $3,230,126.72 for restoration of the building; 2) $193,749.69 in past due rent; 3) $56,766.67 for past taxes; and 4) $166,484.73 in attorney’s fees. The judgment further dismissed 2025 Canal’s claims against Capital One.[12] Mr. Lobell filed a timely motion for new trial, which was denied by way of judgment signed September 3, 2013. Mr. Lobell and K.H.L. Canal then filed a motion for sus-pensive appeal on October 3, 2013, seeking to appeal the trial court’s August 22, 2013, and September 3, 2013 judgments. The trial judge granted the motion on October 4, 2013.[13]
II
In this part we set out the general law which governs our disposition of Mr. Lo-bell’s appeal.
I12A
In civil cases, we apply the manifest error standard of review to the trier of fact’s factual findings. See Hall v. Folger Coffee Co., 03-1734, p. 9 (La.4/14/04); 874 So.2d 90, 98. In order to reverse the findings of a trier of fact, “an appellate court must undertake a two-part inquiry: 1) the court must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact; and 2) the court must further determine that the record establishes the finding is clearly wrong.” Harold A. Asher, CPA, LLC v. Haik, 12-0771, p. 4 (La.App. 4 Cir. 4/10/13); 116 So.3d 720, 723-724, quoting S.J. v. Lafayette Parish School Board, 09-2195, p. 12 (La.7/6/10), 41 So.3d 1119, 1127.
The issue for a reviewing court to resolve when faced with a fact finding “is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one.” Even though an appellate court may feel its own *883 evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993) (citations omitted). This review standard is based, in part, on the trial court’s ability to better evaluate the testimony of live witnesses, compared with an appellate court’s sole reliance upon a written record. In addition, the standard is based on “the proper allocation of trial and appellate functions between the respective courts.” Stobart, 617 So.2d at 888, quoting Canter v. Koehring Co., 283 So.2d 716 (La.1978), superseded by | iastatute on other grounds as noted in Walls v. Am. Optical Corp., 98-0455 (La.9/8/99), 740 So.2d 1262, 1265. Consequently, when there are two permissible views of the evidence, the trier of fact’s choice between them cannot be manifestly erroneous. See Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). As pointed out in Lasyone v. Kansas City Southern R.R., 00-2628 p. 6 (La.4/3/01), 786 So.2d 682, 688-689, “[t]hese standards for manifest error review are not new. They are the guiding principles that aid our courts of appeal, which are our error correcting courts, when reviewing a trial court’s factual determinations.” The manifest error standard of review also applies to mixed questions of law and fact. See Brasseaux v. Town of Mamou, 99-1584, pp. 7-8 (La.1/19/00), 752 So.2d 815, 820-821. Lastly, we note that when reviewing questions of law we are simply to determine whether the trial court was legally correct or incorrect. See Goodrich Petroleum Co., LLC v. MRC Energy Co., 13-1435, p. 13 (La.App. 4 Cir. 4/16/14); 137 So.3d 200, 207.
B
Because the parties to this appeal were bound together by a lease agreement, we begin by setting out those general principles governing leases and eviction proceedings.
A lease is a synallagmatic contract which burdens both the lessor and the lessee with certain obligations. See La. Civil Code art. 2668. Lessors are obligated to do three things: 1) to deliver that which is the subject of the lease to the lessee; 2) to maintain the object in a suitable condition; and 3) to maintain the 114Iessee in peaceable possession for the duration of the lease. See La. Civil Code art. 2682. The lessee, on the other hand, is obliged: 1) to pay the rent pursuant to the terms of the lease; 2) to prudently administer the lease according to the lease terms; and 3) to deliver the object to the lessor. See La. Civil Code art. 2683.
In the event that a lessee breaches a lease, the lessor may pursue one of two options.[14] First, the lessor “may sue *884 to' cancel the lease and to recover accrued rentals due, or he may sue to enforce the lease and to recover both accrued rentals and future accelerated rentals (if the lease contains an acceleration clause).” Richard v. Broussard 495 So.2d 1291, 1293 (La.1986). (Citations omitted, emphasis added.) The Richard court noted that these remedies are mutually exclusive. Id. If, for example, “the lessor elects to cancel the lease, the lease is terminated and the lessor is entitled to return into possession, but he forfeits the right to all future rentals.” Id. Conversely, “if the lessor elects to enforce the lease, he may obtain a money judgment against the lessee based on the terms of the lease agreement, but the lease remains in effect and the lessee retains the right of occupancy for the remainder of the term of the lease.” Id. Not only are the | tsremedies set forth in Richard mutually exclusive, but any attempt by a lease document “to circumvent established law ... is unenforceable.” 1001 Harimaw Court E., L.L.C. v. Blo, Inc., 10-860, p. 4 (La.App. 5 Cir. 5/24/11); 66 So.3d 1131, 1133.
If a lessor chooses to cancel the lease and terminate the lessee’s right of occupancy, the lessor must follow the statutory eviction procedures set out in La. C.C.P. art. 4701 et seq.[15] See Southpark Community Hasp., LLC v. Southpark Acquisition Co., LLC, 13-59, p. 15 (La.App. 3 Cir. 10/30/13); 126 So.3d 805, 816. The cancellation of leases is not favored in Louisiana law. See Porter v. Miller, 00-1436, p. 4 (La.App. 3 Cir. 2/28/01); 782 So.2d 1123, 1126. A lessor’s right to dissolve a lease upon the lessee’s failure to pay rent timely is subject to judicial control according to the circumstances. See Porter, 00-1436, pp. 4-5, 782 So.2d at 1126. A lessee’s failure to pay rent timely does not automatically require the termination of the lease. See Plunkett v. D & L Family Pharmacy, Inc., 562 So.2d 1048, 1053 (La. App. 3 Cir.1990).
Accordingly, the first step in a proper eviction proceeding is for the lessor to give the lessee a five-day notice to vacate the leased premises. See La. C.C.P. art. 4701. If the lessee fails to vacate the leased premises within five days, the lessor must resort to summary judicial process before he can legally terminate the lessee’s possession. See La. C.C.P. art. 4731. Lastly, the final step in an eviction proceeding is for the lessor to obtain a judgment of eviction, which then enables him to legally terminate the 11filessee’s possession. See La. C.C.P. art. 4733. A trial court’s judgment cancelling a lease and ordering a lessee’s eviction is subject to the manifest error/clearly wrong standard of review. See Sizeler Real Estate Management Co., Inc. v. Family Dollar Stores of Louisiana, Inc., 01-1974, p. 4 (La.App. 4 Cir. 3/20/02); 814 So.2d 611, 614.
Ill
Mr. Lobell argues that the trial court erred in denying his claims when it: 1) found that the December 28, 2007, January 31, 2007, and February 12, 2008 letters did not constitute anticipatory breaches of contract by 2025 Canal and the Rosenberg heirs; 2) concluded that 2025 Canal and the Rosenberg heirs did not terminate the *885 lease and evict him from the property prior to the end of the leases’ term; and 3) failed to award him damages for breach of the lease. Mr. Lobell, moreover, also argues that the trial court erred in granting 2025 Canal’s claims when it: 1) terminated the lease in 2025 Canal’s favor; and, 2) awarded 2025 Canal too much money for restoration costs.
A
We first address Mr. Lobell’s assertion that the trial court erred when it granted 2025 Canal’s request to terminate the lease. Mr. Lobell argues that the trial court erred in terminating the lease in favor of 2025 Canal because the Rosenberg heirs failed to specifically afford him a cure period according to the 117terms of the lease. The trial judge concluded that the December 28, 2007, January 31, 2007, and February 12, 2008 letters from some of the Rosenberg heirs to Mr. Lobell satisfied the lease’s default notice requirement. Mr. Lobell, however, argues that these letters could not have satisfied the lease’s default notice requirement because none of the letters specifically granted him the lease’s specified cure period. Our reading of the lease and the letters supports Mr. Lobell’s contention.
It is well settled that “a lease contract forms the law between the parties, defining their respective legal rights and obligations. The parties are bound by the agreement regardless of any harsh consequences contained in those agreements.” CA One/Pampy’s v. Brown, 07-1877, p. 9 (La.App. 4 Cir. 4/2/08); 982 So.2d 909, 915, citing New Orleans Hat Attack v. New York Life Insurance Co., 95-0055, 950056, pp. 4-5 (La.App. 4 Cir. 11/80/95); 665 So.2d 1186, 1189. Specifically, the 1957 lease indicates that the lessor can only seek to terminate a defaulting lessee’s rights under the lease after the occurrence of two things: 1) the lessor provides the lessee with a written notice of default; and 2) the lessee fails to remedy the default within thirty days, or some other reasonable period if the default cannot be cured within thirty days. We have studied the letters in question and in no case did the Rosenberg heirs specifically grant Mr. Lobell any type of cure period.
We conclude, therefore, that trial judge was clearly wrong when he found that the December 28, 2007, January 31, 2007, and February 12, 2008 letters constituted adequate notices of default under the 1957 lease. The Rosenbergs | abound themselves to give their lessee adequate written notice of default and afford him a cure period to attempt to remedy his defaults. Because the default letters failed to specifically afford him a cure period, they failed to comply with the terms of the lease. Because the letters did not comply with the lease, the trial court erred when it granted 2025 Canal’s request to terminate the lease and evict Mr. Lobell. We must, accordingly, vacate that portion of the judgment which terminated the lease in favor of 2025 Canal and awarded it building restoration costs, past unpaid rent, attorney’s fees, and reimbursement for monies spent by the Rosenberg heirs on the payment of ad valorem taxes. The lease is, therefore, still in effect and we remand 2025 Canal’s claims to the trial court for further proceedings.
B
We next address Mr. Lobell’s errors regarding the trial court’s denial of his claims for anticipatory breach of contract, wrongful eviction/termination of lease, and for damages. We review Mr. Lobell’s claims for anticipatory breach and wrongful eviction together because they are both premised upon the same pieces of evidence — three letters from some of the Rosenberg heirs.
*886 The doctrine of anticipatory breach of contract “applies when an obli-gor announces he will not perform an obligation which is due sometime in the future. The obligee need not wait until the obligor fails to perform for the contract to be considered in breach.” Fertel v. Brooks, 02-0846, p. 18 (La.App. 4 Cir. 9/25/02); 832 So.2d 297, 305, quoting Gulf Coast Bank & Trust Co. v. Rick Granger Enterprises, 2001-0656, p. 3 (La.App. 3 Cir. 10/31/01); 800 So.2d 402, 404. [19“Where a party refuses and does not merely fail or neglect to comply with his contractual obligation, his refusal constitutes an active breach of the contract, which relieves the other party of the obligation of continuing to perform under the contract.” Andrew Development Corp. v. West Esplanade Corp., 347 So.2d 210, 212-213 (La.1977).
The cause of action for wrongful eviction flows from La. Civil Code art. 2682’s directive that a lessor is bound from the very nature of the contract “[t]o protect the lessee’s peaceful possession for the duration of the lease.” See also Girgis v. Macaluso Realty Co., Inc., 00-753) p. 4 (La.App. 4 Cir. 1/31/01), 778 So.2d 1210, 1212. A lessor who fails to meet his or her obligations under the provisions of La. C.C. art. 2682 by wrongfully dispossessing the lessee of the premises is generally liable for any resulting damages. Duhon v. Briley, 12-1137, p. 5 (La.App. 4 Cir. 5/23/13); 117 So.3d 253, 258. The Louisiana Code of Civil Procedure provides an exception to that liability where the lessor follows the eviction procedures set out in arts. 4701-4735. Id.
Specifically, Mr. Lobell tethers both of these claims to the December 28, 2007, and February 12, 2008, letters from some of the Rosenberg heirs that noticed Mr. Lobell’s defaults and informed him of their desire to terminate the lease. He argues that the letters indicated that some of the Rosenberg heirs no longer intended to honor the lease agreement because they failed to explicitly afford him any type of cure period and announced their intent to terminate the lease. Mr. Lobell, likewise, relies upon the January 31, 2007, letter from some of the | ^Rosenberg heirs that refused his partial tender of rents as indicative of their refusal to allow him the opportunity to cure his defaults.
While it is true that the December 28, 2007 and February 12, 2008 letters indicate that some of the Rosenberg heirs intended to terminate the lease, and failed to specifically grant to Mr. Lobell some type of cure period, the trial court was correct in concluding that these statements, when viewed in the light of all the evidence, did not amount to a statement on the Rosenberg heirs’ part that they no longer intended to honor the lease or prevent Mr. Lobell from curing his defaults. The trial court observed that these letters were merely a part of the eviction process set out in the Code of Civil Procedure. As this Court observed in Bill Kassel Farms, Inc. v. Paul, 96-462, p. 4 (La.App. 3 Cir. 12/11/96); 690 So.2d 807, 809, a notice directing the lessee to vacate, or announcing a lessor’s intention to terminate the lease, “is only the initial stage in effectuating an eviction and it is upon lessee’s failure to vacate the leased premises after receiving such notice that the lessor must proceed summarily to have the lessee evicted.” These letters, therefore, could not have caused an eviction, forced a termination, or resulted in an anticipatory breach of the lease. .
Moreover, the trial court was not clearly wrong in concluding that the parties acted as though the lease was still in effect despite the language contained in the letters. Specifically, 2025 Canal and the Rosenberg heirs introduced evidence at trial which showed that, up until Mr. Lobell filed suit, the Rosenberg heirs made numerous infor *887 mal requests of him to pay back rent, pay past due ad valorem |⅞1 taxes, provide an accounting of the insurance proceeds, and restore the building. Mr. Lobell, for his part, continued in his attempts to bring about a negotiated resolution to the parties differences up until the time that he filed suit. Indeed, the evidence shows that Mr. Lobell made several attempts to restore the property, pay a portion of the back rent, and resolve some of the unpaid ad valorem tax bills. While the letters did not specifically grant Mr. Lobell a formal cure period, they neither specifically stated that all efforts on Mr. Lobell’s part to cure the defaults would be rejected. Thus, the trial court was not clearly wrong when' it concluded that the Rosenberg heirs and 2025 Canal did not prevent Mr. Lobell from attempting to cure his defaults or that the letters created an anticipatory breach.
The evidence, likewise, supports the trial court’s conclusion that 2025 Canal and the Rosenberg heirs did not dispossess Mr. Lobell from the leased property. Specifically, 2025 Canal and the Rosenberg heirs presented evidence at trial which showed that movable property belonging to Mr. Lobell and his former tenants could still be found inside the building in 2010 — two years after he filed suit. Likewise, 2025 Canal and the Rosenberg heirs presented evidence that as late as 2013 — five years after he initiated this matter with a posses-sory action — Mr. Lobell still had physical access to the building, had listed it for sale, and was exhibiting it to prospective purchasers. The trial court was not clearly wrong in concluding that Mr. Lobell was never wrongfully evicted from the leased property.
Because we find that the trial court was not clearly wrong in concluding that the letters did not terminate the lease, or dispossess Mr. Lobell, we likewise 1 ¡^conclude that it was not clearly wrong in refusing to find that these letters created an anticipatory breach of contract. Further, because we affirm the trial court’s judgment on these issues we pretermit discussing Mr. Lobell’s claims for damages.
DECREE
We vacate that portion of the trial court’s judgment which terminated the lease in favor of 2025 Canal St., L.L.C., and cast Kenneth H. Lobell and K.H.L. Canal, L.L.C. in judgment for building restoration costs, past unpaid rent, attorney’s fees, and reimbursement for monies spent by the Rosenberg heirs on the payment of ad valorem taxes. We remand 2025 Canal St., L.L.C.’s claims to the trial court for further proceedings. We, furthermore, affirm that portion of the trial court’s judgment that dismissed Kenneth H. Lobell’s causes of action and claims for damages against the Rosenberg Heirs and 2025 Canal St., L.L.C.
VACATED IN PART, AFFIRMED IN PART, AND REMANDED.

. The acts by which the individual Rosenberg heirs transferred their respective interests to 2025 Canal are not in this matter’s record.

. The Rosenberg heirs are not the only individuals with leasehold interests in the property subject to the December 3, 1997 assignment. The record contains a June 25, 1998 Act of Correction to the December 3, 1997 transfer which established that these other lease interests, when physically combined with the property covered by the Rosenberg heirs' interests, made up the entirety of Mr. Lobell’s holdings then physically situated at 2025 Canal Street in New Orleans, Louisiana. These other lessors, however, have never been a part of this matter.

. Mr. Lobell has brought his petition in his individual capacity.' While its intervention notes that Mr. Lobell transferred his interests in the property to K.H.L. Canal, neither 2025 Canal nor the Rosenberg heirs have challenged Mr. Lobell’s right to prosecute his claims in his individual capacity. Indeed, 2025 Canal’s Supplemental and Amending Intervention admits that “Kenneth H. Lobell and K.H.L. Canal, LLC, are, and at all times material hereto have been, lessees of the property.”

. Hibernia was subsequently acquired by Capital One.

. This matter’s record contains exhibits reflecting that individualized copies of the Consent and Agreement were prepared for all of the Rosenberg heirs. However, seven of the ten copies are not signed by the respective Rosenberg heirs for whom the documents were prepared. The three consenting Rosenberg heirs transferred their interests in the Consent and Agreement to'2025 Canal near the inception of this matter. The individual acts of transfer, however, are not in this matter’s record.

. The Agreement to Provide Insurance executed by Mr. Lobell in favor of Hibernia, however, required the building to be insured for replacement value.

. The record indicates that it was Mr. Lobell’s practice to mail individual rent checks— which presumably reflect each heir's proportional interest in the property- — to the various Rosenberg heirs. The agreement between the Rosenberg heirs and Mr. Lobell that established this practice, and the formula by which each heir’s percentage of the rent was to be fixed, are not a part of the this matter’s record.

. There is no evidence in the record that 2025 Canal pursued the First City Court eviction proceeding.

. Although Ann Rosenberg Silberman has answered Mr. Lobell’s suit as a defendant and Rosenberg heir, it does not appear that Mr. Lobell ever sued her in her individual capacity. We also observe that Mr. Lobell’s three amended petitions name David Hirschkop as a defendant in his individual capacity and identify him as a Rosenberg heir. 2025 Canal’s intervention, however, does not list Mr. Hirschkop as a Rosenberg heir, although he does respond in his individual capacity alongside the rest of the Rosenberg heirs in their 2011 answer to Mr. Lobell’s petitions. Mr. Hirschkop, who was Mr. Lobell’s primary contact with the Rosenberg heirs, testified at trial that he is, in fact, married to Paige Rosenberg Hirschkop — one of the Rosenberg heirs.

. The 1957 lease provides that either party to the lease will be entitled to an award of costs and attorney’s fees incurred "by or against the other in enforcing agreements and provisions."

. Although named as individual defendants by Mr. Lobell in 2008, the Rosenberg heirs did not answer Mr. Lobell’s suit until 2011. There is some evidence in the record, moreover, which indicates that the Rosenberg heirs were not fully in contact with one another when Mr. Lobell filed his initial lawsuit. We refer, specifically, to the manner in which certain exceptions were signed by less than all of the Rosenberg heirs and a 2010 answer to Mr. Lobell's original, first, and second amending petitions filed by a curator appointed to represent four of the Rosenberg heirs who were described in the answer as "absentee defendants."

. 2025 Canal has not appealed this aspect of the trial court’s judgment.

. We note that this is not the first time this matter has appeared before us. See Lobell v. Rosenberg, 10-0983 (La.App. 4 Cir. 4/6/11); 62 So.3d 823, where this Court reversed the trial court’s granting of an exception of lack of personal jurisdiction filed by one individual Rosenberg heir, and an exception of no cause of action filed by three other Rosenberg heirs.

. A lease is a species of contract. See La. Civil Code art. 2668. Accordingly, it is governed not only by the Civil Code articles regarding leases, see La. Civil Code arts. 2668 et seq., but also those Civil Code articles applicable to both obligations in general and conventional obligations. See La. Civil Code art. 2669. Accordingly, a trier of fact’s factual conclusions respecting a breach of contract claim are governed by the manifest error/clearly wrong standard of review. See Tarifa v. Riess, 02-1179, p. 10 (La.App. 4 Cir. 5/7/03); 856 So.2d 21, 27 (on rehearing). Similarly, the determination of whether a party to a contract acted in bad faith is a factual determination which will not be reversed by the appellate court unless it is manifestly erroneous or clearly wrong. N-Y Associates, Inc. v. Board of Commissioners of Orleans Parish Levee District, 04-1598, p. 8 (La.App. 4th Cir.2/22/06); 926 So.2d 20, 24. Moreover, the question of whether a defaulting party to a contract has cured its breach is likewise a question of fact, dependent upon the particular facts of the case, and, thus, subject to the manifest error standard of review. See Barfield v. St. Tammany Physicians *884 Network, unpub., 10-2246, p. 7 (La.App. 1 Cir. 9/14/11); 2011 WL 4344248.

. It is a principle of long-standing that a lessor must resort to the judicial process and must obtain a judgment of eviction in order to properly evict his tenant. See Pelleteri v. Caspian Group, Inc., 02-2141, p. 9 (La.App. 4 Cir. 7/2/03); 851 So.2d 1230, 1236, citing Weber v. McMillan, 285 So.2d 349, 351 (La. App. 4 Cir. 1973), "If the lessor should wrongfully dispossess the lessee, he commits a trespass and becomes liable to the lessee in damages.” Weber, 285 So.2d at 351.