# Supreme Court of Louisiana

The Opinions handed down on the **14th day of October, 2015**, are as follows:

**PER CURIAMS**:

2015-C -0247     KENNETH H. LOBELL, ET AL. v. CINDY ANN ROSENBERG, ET AL. (Parish of Orleans)

For the reasons assigned, the judgment of the court of appeal is reversed insofar as it finds the lease was not properly terminated. The judgment of the district court holding the lease was properly terminated is reinstated. The case is remanded to the court of appeal for further proceedings consistent with this opinion.

GUIDRY, J., dissents and assigns reasons.

SUPREME COURT OF LOUISIANA

NO. 2015-C-0247

KENNETH H. LOBELL, ET AL.

VERSUS

CINDY ANN ROSENBERG, ET AL.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FOURTH CIRCUIT, PARISH OF ORLEANS

PER CURIAM

In this matter, we are called upon to determine whether the lessors properly terminated a lease. For the reasons that follow, we find the district court was correct in finding the lease was terminated, and the court of appeal erred in disturbing the district court's judgment.

**FACTS AND PROCEDURAL HISTORY**

By agreement dated January 25, 1957, Simon and Herman H. Rosenberg leased property located at 2025 Canal Street in New Orleans to Eagle Enterprises, Inc. for a term of sixty years, to expire on May 31, 2017. The lease, hereinafter referred to as the "1957 lease," provided:

> TWENTY-SEVENTH: Time shall be of essence respecting the payment of rent and all other obligations assumed by the Lessee hereunder; and **if a default shall be made by Lessee** in the payment of any rent herein provided for on the day the same becomes due and payable, **and such default shall continue thirty (30) days (after notice thereof in writing by Lessor, or his agents or attorneys to Lessee),** or in case of any default in relation to liens as hereinbefore provided shall continue thirty (30) days after written notice, or if Lessee shall fail to pay any of the taxes or assessments herein provided for, or in case of the sale or forfeiture of the premises, or any part thereof, during the demised term, for the nonpayment of any taxes or assessments, or in case Lessee shall fail to keep insured any building or buildings or improvements which may at

any time hereafter be on premises as herein provided for, or fail to spend insurance money as herein provided for, or fail to rebuild as herein provided; or in the event of the bankruptcy, receivership or insolvency of Lessee, **then in any or either of such events, it shall and may be lawful for the Lessor, at his option, at or after the expiration of thirty (30) days' previous notice in writing either to declare the rent for the whole unexpired term due and exigible or to declare this lease terminated** and enter the premises, and the buildings and improvements thereon, or any part thereof, either with or without process of law to re-enter and take possession thereof, Lessee hereby waiving any demand for possession of premises and any and all buildings and improvements then situated thereon; provided, **however, that if the default is one which cannot be cured within the said thirty (30) day period, Lessee shall be entitled to a reasonable time following the giving of such notice in which to cure or remedy the default, provided further, that upon receipt of said notice Lessee shall start upon and promptly and diligently proceed with the curing or remedying thereof.** And Lessee agrees that on termination of demised term at such election of Lessor, or in any other way, Lessee will surrender and deliver up premises and property, peaceable to the Lessor, his agents or attorneys, immediately upon the termination of demised term; and if Lessee, its agents, attorneys and tenants shall hold premises or any part thereof one day after the same should be surrendered according to the terms of this Lease, they shall be deemed guilty of forcible detainer of premises, under the statute, and shall be subject to eviction and removal, forcibly or otherwise, with or without process of law . . . .

In 1997, after other transfers and assignments of the original lease, E.E.W. Properties, Ltd., an intermediate lessee, transferred and assigned its leasehold interest to Kenneth Lobell. Mr. Lobell then executed a "Consent and Agreement" with the heirs of Simon and Herman Rosenberg (collectively referred to as the "Rosenbergs") in which Mr. Lobell acknowledged the assignment of the terms of the 1957 lease.

The lease documents, including the 1957 lease and the "Consent and Agreement," required Mr. Lobell to pay stipulated rent; pay all ad valorem taxes on the property; maintain insurance coverage in the amount ot $2.6 million, with insurance payable to lessors; place insurance proceeds in a trust with lessors to be

2

used for repair of the building; repair any damages within six months from the date of casualty loss; and keep improvements in a state of good repair.

The property was flooded in the aftermath of Hurricane Katrina. Following the hurricane, the parties disputed the disbursement and use of insurance proceeds, the payment of rent, and repairs to the building. On December 28, 2007, the Rosenbergs, through counsel, sent Mr. Lobell a default letter terminating the lease. The letter stated:

> This is to notify you that you are in default under the lease in that:
>
> (1) No rent has been paid since August **29, 2005**;
>
> (2) The ad valorem taxes on the premises have not been paid;
>
> (3) The building is uninsured; and
>
> (4) The obligations of the lessee to apply insurance proceeds to the repair of the improvements and to repair the improvements to the condition in which they were prior to Hurricane Katrina have not been satisfied.
>
> My clients are electing to terminate the lease.

Mr. Lobell responded the next day and tendered a partial payment of past due rents. The Rosenbergs refused to accept the partial payment. On February 12, 2008, more than one month after the December 2007 default letter, the Rosenbergs sent Mr. Lobell a supplementary letter. The supplementary letter detailed Mr. Lobell's failure to maintain adequate insurance on the property:

> Mr. Lobell is in default because he has not provided insurance in compliance with these provisions of the Lease and/or alternatively the Consent, and he does not currently maintain insurance that complies with these requirements.
>
> I have asked you to provide all evidence of insurance from 2005 forward. You have provided only proof of

> current liability insurance; and have not provided proof of either fire and extended coverage and/or hazard insurance.

> \* \* \*

> Mr. Lobell remains in default until the improvements are insured.

In addition, the February 12 letter details Mr. Lobell's failure to place the insurance proceeds in a trust and to use them to repair the building in violation of the lease documents:

> Rather than using those insurance proceeds for the repair and restoration of the improvements, the proceeds were used to pay off Mr. Lobell's existing loan. Contrary to the assertion in yours of February 1, 2008, the receipt and disbursement of insurance proceeds is relevant under one of more of the above-cited provisions.

> On behalf of the owners, I reiterate my request for an accounting of insurance proceeds that were paid in connection with Katrina claims, for copies of contracts for all work done on the building post-Katrina, and for a list of expenses incurred in connection with Mr. Lobell's alleged efforts. If Mr. Lobell has in fact applied insurance proceeds to "repairing the building to a state in which it can be re-rented," as you assert, then evidence of his expenditures should be readily available.

> Mr. Lobell is in default because the insurance proceeds have not, to any significant degree, been used for the repair and restoration of the improvements.

Finally, the February 12 letter detailed Mr. Lobell's failure to repair or rebuild the damage within six months of the loss, keep the building in good repair, and pay ad valorem taxes.

On May 29, 2008, the Rosenbergs served Mr. Lobell with a notice to vacate due to the non-payment of rent and other lease violations, including failure to maintain hazard insurance, to provide proof of insurance, to place insurance proceeds in trust, to restore the building within six months of damage, and to pay ad valorem taxes.

4

Subsequently, Mr. Lobell filed a petition for writ of possession and a possessory action against the Rosenbergs,[1] alleging damages arising out of the Rosenbergs' failure to allow him time to cure the default pursuant to the 1957 lease provisions, anticipatory breach of contract, and wrongful eviction during the lease term. The Rosenbergs responded by filing an incidental demand against Mr. Lobell, alleging he breached the lease and consent agreement by failing to pay rent and taxes, maintain $2.6 million in hazard insurance, place insurance proceeds in trust, spend the insurance proceeds for the purpose of repairing the building and improvements, and keep improvements in good repair.[2]

Following a trial on the merits, the district court rendered judgment in favor of the Rosenbergs and dismissed Mr. Lobell's claims. The court terminated the lease of the property and rendered a money judgment in favor of the Rosenbergs in the amount of $3,647,127.81.

In its reasons for judgment, the district court specifically rejected Mr. Lobell's argument that the Rosenbergs did not afford him sufficient opportunity to cure the breach. The district court stated:

> The Court further finds that Mr. Lobell has failed to establish that [the Rosenbergs] breached the lease by failing to allow him thirty (30) days to cure the default. Although Mr. Lobell attempted to tender rent in January 2008 and paid and/or protested ad valorem taxes due, those were not the only defaults. The letters of December 28, 2007, January 31, 2008, and February 12, 2008 all made

---

[1] Shortly after suit was filed, the Rosenbergs formed a corporation known as 2025 Canal St., LLC and transferred the ownership of the building to this corporation. 2025 Canal St., LLC then intervened in the proceedings. To avoid confusion, we refer to the Rosenbergs and 2025 Canal St., LLC collectively as "the Rosenbergs."

[2] The Rosenbergs also filed a third-party demand against Capitol One Bank, N.A., alleging breach of contract and breach of fiduciary duties for failing to place the insurance proceeds into trust, failing to require the insurance proceeds be used to restore the building, and making a second loan to Mr. Lobell, which was secured by the existing mortgage, without the Rosenberg's notice, knowledge or agreement. Capitol One filed a cross claim against Mr. Lobell for indemnity. These claims are not at issue in the proceeding currently before the court.

5

demand for the insurance proceeds to restore the building. It was undisputed that the insurance proceeds were not placed in trust and that the building was not put in the same condition as it was at the time of the loss.

The district court went on to find Mr. Lobell breached the lease by failing to comply with several obligations under the lease:

> Pursuant to the Lease and Consent and Agreement (which supplemented the terms of the lease), rent was set at $2,0833.33 per month from June 1, 1982 to May 31, 2017; lessee was required to pay all real-estate taxes, but could contest those payments; lessee was to maintain $2.6 million in hazard insurance, which proceeds were required to be placed in trust under certain circumstances and used to return the building to the same condition as prior to the loss; lessee was required to keep the building in good repair and to repair within six months of a loss. The Bank was made an additional insured on the insurance policy obtained on the building improvements by Mr. Lobell.

> As to payment of rent, the Court found no evidence of an oral modification to the lease suspending rent for a period after Katrina, as was alleged by Mr. Lobell. Further, although Mr. Lobell did tender rent following the December 28, 2007 letter of default, lessors did not accept as the amount was less than due and because Mr. Lobell had indisputably failed to cure the other defaults. [The Rosenbergs] established by a preponderance of the evidence that the total unpaid rent from September 2005 through April 2013 was $193,749.69.

> As to payment of taxes, although Mr. Lobell had a right under the agreements to contest the tax assessments, he did not do so timely and he did not do so for every tax assessment. In fact, the property was sold at [a] tax sale in 2007 for non-payment of the 2004 and 2005 taxes and [the Rosenbergs were] forced to buy back the property. [The Rosenbergs have] established by a preponderance of the evidence that Mr. Lobell breached by failing to pay property taxes as required and the unpaid taxes total $56,766.67.

> It was undisputed that Mr. Lobell did not maintain $2.6 million in hazard insurance as required by the Consent and Agreement. Mr. Lobell accepted insurance proceeds based on the St. Paul Travelers and Colonial Claims actual cash value in the aggregate amount of $2,247,403.00 and not replacement cost value of $2,565,629.18. The

6

Agreement to Provide Insurance executed by Mr. Lobell requires "replacement value", and admittedly Mr. Lobell settled on the lesser actual cash value. The Court finds that the flood insurance proceeds were not a "collateral source", as argued by Mr. Lobell.

Further, admittedly the insurance proceeds were not placed in trust in late 2005 and early 2006 and not used for the repair of the building. The Court rejects Mr. Lobell's contention that he was not required by the agreements to use the insurance proceeds to return the leased premises to the same condition as before Hurricane Katrina. The Consent and Agreement was clear on this issue. In fact, the evidence was clear that Mr. Lobell never intended to restore the property to the same condition as prior to Katrina, despite the requirements of the agreements. He considered that option to be unprofitable to all. However, there were never any assurances of profitablity in any agreement between the parties.

Mr. Lobell appealed. On appeal, the court of appeal affirmed the portion of the judgment dismissing Mr. Lobell's causes of action and claims for damages against the Rosenbergs. However the court of appeal vacated the portion of the district court's judgment which terminated the lease and awarded damages. *Lobell v. Rosenberg*, 14-0060 (La.App. 4 Cir. 1/7/15), 158 So.3d 874. In finding the lease was not properly terminated, the court of appeal found the Rosenbergs' default letters failed to afford Mr. Lobell a period of time to remedy his default:

We conclude, therefore, that trial judge was clearly wrong when he found that the December 28, 2007, January 31, 2007, and February 12, 2008 letters constituted adequate notices of default under the 1957 lease. The Rosenbergs bound themselves to give their lessee adequate written notice of default and afford him a cure period to attempt to remedy his defaults. Because the default letters failed to specifically afford him a cure period, they failed to comply with the terms of the lease. Because the letters did not comply with the lease, the trial court erred when it granted [the Rosenbergs'] request to terminate the lease and evict Mr. Lobell.

*Lobell v. Rosenberg*, 14-0060 at pp. 17-18, 158 So.3d at 885.

Upon the application of the Rosenbergs, we granted certiorari to review the

7

correctness of that decision.[3] *Lobell v. Rosenberg*, 15-0247 (La. 5/1/15), 169 So.3d 366. The narrow question presented for our resolution is whether the Rosenbergs' default letters were in compliance with the provisions of the lease.

## DISCUSSION

In interpreting the lease, we begin from the well-settled premise that "[c]ontracts have the effect of law for the parties" and the "[i]nterpretation of a contract is the determination of the common intent of the parties." *Clovelly Oil Co., LLC v. Midstates Petroleum Co. LLC,* 12-2055, p. 5 (La. 3/19/13), 112 So.3d 187, 192; quoting *Marin v. Exxon Mobil Corp.*, 09-2368, p. 35 (La. 10/19/10), 48 So.3d 234, 258, and La. Civ. Code arts. 1983 and 2045. The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and not assumed. *Prejean v. Guillory*, 10-0740, p. 7 (La. 7/2/10), 38 So.3d 274, 279. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. Common intent is determined, therefore, in accordance with the general, ordinary, plain and popular meaning of the words used in the contract. *Prejean*, 38 So.3d at 279. When a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties. *Id.* However, even when the language of the contract is clear, courts should refrain from construing the contract in such a manner as to lead to absurd consequences. *Amend v. McCabe*,

---

[3] Neither party sought review of the court of appeal's judgment insofar as it affirmed the judgment dismissing Mr. Lobell's causes of action and claims for damages against the Rosenbergs. Accordingly, this portion of the court of appeal's judgment is final.

95-0316, p. 8 (La. 12/1/95), 664 So.2d 1183, 1187; La. Civ. Code art. 2046. The words of a contract must be given their generally prevailing meaning. La. Code Civ. P. art. 2047. Moreover, a contract provision that is susceptible to different meanings must be interpreted with a meaning that renders the provision effective, and not with one that renders it ineffective. La. Civ. Code art. 2049; *Amend*, 664 So.2d at 1187. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. Civ. Code art. 2050; *Amend*, 664 So.2d at 1187.

Paragraph 27 of the lease governs default for failure to pay rent, providing "if a default shall be made by Lessee in the payment of any rent herein provided for on the day the same becomes due and payable, and such default shall continue thirty (30) days (after notice thereof in writing by Lessor, or his agents or attorneys to Lessee). . . it shall and may be lawful for the Lessor, at his option, at or after the expiration of thirty (30) days' previous notice in writing either to declare the rent for the whole unexpired term due and exigible or to declare this lease terminated." Contrary to the court of appeal's finding, we see nothing in the clear and unambiguous language of this provision which requires the lessor to give the lessee a formal opportunity to cure the breach. Rather, the lease gives the lessee the option to terminate the lease thirty days after giving written notice.

Mr. Lobell relies on additional language in Paragraph 27 which provides, "if the default is one which cannot be cured within the said thirty (30) day period, Lessee shall be entitled to a reasonable time following the giving of such notice in which to cure or remedy the default, provided further, that upon receipt of said notice Lessee shall start upon and promptly and diligently proceed with the curing or remedying thereof." We acknowledge this language anticipates that under certain circumstances, the lessee might be entitled to additional time beyond the thirty-day period to cure a

9

breach. However, this provision does not impose any obligation on the lessor to give the lessee formal notice of the cure period.

Having found the lease does not require the Rosenbergs to specifically afford Mr. Lobell a cure period, we now turn to the question of whether the district court properly determined the Rosenbergs terminated the lease. Our review of the district court's finding on this issue is subject to the manifest error standard of review. Under this standard, a reviewing court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. *Stobart v. State, through Dept. of Transp. & Develop.*, 617 So. 2d 880, 882 (La. 1993); *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989). This court has announced a two-part test for the reversal of a factfinder's determinations: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). *See Mart v. Hill*, 505 So.2d 1120, 1127 (La. 1987). This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. *See id.* The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. *See id.*

In the instant case, the district court first discussed Mr. Lobell's obligations under the lease. Specifically, the court found Mr. Lobell had obligations under the lease to pay rent (set at the amount of $2,0833.33 per month from June 1, 1982 to May 31, 2017), pay all real estate taxes, maintain $2.6 million in hazard insurance on the building, with the requirement the proceeds be placed in trust under certain circumstances, keep the building in good repair and repair it within six months of a loss.

In finding Mr. Lobell failed to pay rent, the district court specifically rejected

Mr. Lobell's assertion that the parties orally modified to the lease to suspend rent for a period after Hurricane Katrina. The court further found that although Mr. Lobell attempted to tender rent following the December 28, 2007 letter of default, the Rosenbergs did not accept this tender, as the amount was less than due and because Mr. Lobell had failed to cure the other defaults. These findings are supported by the record and are not clearly wrong.

The district court next determined the Rosenbergs established by a preponderance of the evidence that Mr. Lobell breached the lease by failing to pay property taxes. The court recognized Mr. Lobell had a right under the agreements to contest the tax assessment, but found he did not do so timely and he did not do so for every tax assessment. The court determined the property was sold at a tax sale in 2007 for non-payment of the 2004 and 2005 taxes, forcing the Rosenbergs to buy it back. These findings are supported by the record and are not clearly wrong.

The district court next found it undisputed that Mr. Lobell did not maintain the appropriate hazard insurance as required by the lease. It determined the lease required Mr. Lobell to provide "replacement value" coverage, but Mr. Lobell settled on the lesser actual cash value. This finding is supported by the record and is not clearly wrong.

Finally, the district court found the insurance proceeds were neither placed in trust in late 2005 and early 2006 nor used for the repair of the building. The court specifically rejected Mr. Lobell's contention that he was not required by the agreements to use the insurance proceeds to return the leased premises to the same condition as before Hurricane Katrina, noting the agreements between the parties were clear on this issue. The court further found Mr. Lobell never intended to restore the property to the same condition as prior to Hurricane Katrina, despite the requirements of the agreements. This finding is supported by the record and is not

clearly wrong.

## CONCLUSION

In summary, we find the court of appeal erred in holding the Rosenbergs did not properly terminate the lease because they failed to specifically afford Mr. Lobell a cure period to attempt to remedy his defaults. We further conclude the district court did not err in finding the Rosenbergs had ground to terminate the lease based on Mr. Lobell's breaches of the parties' agreement. Accordingly, we must reverse the judgment of the court of appeal insofar as it vacated the district court's judgment and reinstate the district court's judgment holding that the lease was properly terminated. Because the court of appeal pretermitted consideration of the district court's award of damages, we will remand the case to the court of appeal for consideration of this issue.

## DECREE

For the reasons assigned, the judgment of the court of appeal is reversed insofar as it finds the lease was not properly terminated. The judgment of the district court holding the lease was properly terminated is reinstated. The case is remanded to the court of appeal for further proceedings consistent with this opinion.

SUPREME COURT OF LOUISIANA

No. 2015-C-0247

KENNETH H. LOBELL, ET AL.

VERSUS

CINDY ANN ROSENBERG, ET AL.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL
FOURTH CIRCUIT, PARISH OF ORLEANS

**GUIDRY, J., dissents and assigns reasons.**

I respectfully dissent and would affirm the court of appeal's judgment. There is a long and complex history between the lessors and the lessees, and, as the majority points out, the lease is the law between the parties. Thus, when examining the facts of this case, giving full effect to Paragraph 27 of the lease with regard to providing a "reasonable time" to cure a default, the court of appeal, at the end of the day, did not err in concluding the lessors failed to properly place the lessees in default by providing adequate written notice of the default specifically affording the lessor a cure period.