STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

17-904


JOHN PALIR, III

VERSUS

GUIDEONE INSURANCE COMPANY, ET AL.


**********


APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2012-651
HONORABLE DAVID ALEXANDER RITCHIE, DISTRICT JUDGE


**********


SHANNON J. GREMILLION
JUDGE


**********


Court composed of Marc T. Amy, Shannon J. Gremillion, and Candyce G. Perret, Judges.


AFFIRMED.


Jack W. Caskey
Attorney at Law
704 Ryan Street
Lake Charles, LA 70601
(337) 439-8854
COUNSEL FOR PLAINTIFF/APPELLANT:
    John Palir, III

**Ryan N. Ours**
**Dodson, Hooks & Frederick**
**P.O. Box 14503**
**Des Moines, IA 50306**
**(225) 372-6473**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
**GuideOne Insurance Company**
**Topsy United Pentecoastal Church**

**Mark R. Pharr, III**
**Patricia K. Penny**
**Galloway, Johnson, Tompkins, Burr & Smith**
**328 Settlers Trace Boulevard**
**Lafayette, LA 70508**
**(337) 735-1760**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
**GuideOne Insurance Company**
**Topsy United Pentecoastal Church**

**Keith L. Richardson**
**Guglielmo, Marks, Schutte, Terhoeve & Love LLP**
**501 Louisiana Avenue**
**Baton Rouge, LA 70821**
**(225) 387-6966**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
**GuideOne Insurance Company**
**Topsy United Pentecoastal Church**

**Daniel McKean Livingston**
**Payne & Fears, LLP**
**4 Park Plaza, 11th Floor**
**Irvine, CA 92614**
**(949) 851-1100**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**ITT Corporation**

**Lawrence G. Pugh  III**
**Pugh, Accardo, Haas, Radecker & Carey, L.L.C**
**1100 Poydras, Suite 3200**
**New Orleans, LA 70163-1132**
**(504) 799-4500**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**ITT Corporation**

**GREMILLION, Judge.**

The plaintiff-appellant, John Palir, III, appeals the jury's verdict awarding him $192,277.45 in general and special damages and assessing him with 50% of the fault in the explosion of a barbecue trailer. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Palir, who was the pastor of the Topsy United Pentecostal Church (the Church), was burned following the June 2009 explosion of the church-owned barbecue trailer. Palir and Deacon Clifton Reeves were attempting to light the barbecue pit in preparation for a barbecue chicken fundraiser the following weekend. Deacon Reeves depressed the pilot button; at the same time Palir lit the pilot with a lighter wand and a ball of fire ignited and blew Palir out of the barbecue trailer and into Terry Reeves, Deacon Reeves's grandson, who was standing in the doorway of the barbecue trailer when the explosion occurred. Palir filed suit against the Church and its insurer, GuideOne Insurance Company, in February 2012. On that same date, Palir filed a motion and order to consolidate Terry Reeves's suit, filed in January 2012, with his own. In June 2012, Palir added the manufacturer of the regulator controlling the pilot lighting system, ITT Corporation, as a defendant. In October 2012, Palir and Reeves file a joint amending and supplemental petition for damages citing the malfunction of the regulator and the negligence of the Church in causing injuries to Reeves and Palir.

In March 2017, Palir filed a motion in limine to prevent a jury instruction on his fault based on the summary judgment granted in the consolidated matter of *Reeves v. GuideOne Insurance Co.*, Docket No. 2012-0135 (*Reeves* matter). Palir was named as a defendant in the *Reeves* matter. In October 2012, in the *Reeves* matter, the trial court granted summary judgment in favor of Palir and dismissed

all claims against him. Neither a record of the hearing on the motion nor reasons for judgment are included in the record before us. In the motion in limine, Palir urged that in granting the summary judgment in Palir's favor in the *Reeves* matter, the trial court determined that he was "not at fault" and the Church could not relitigate the issue based on the doctrine of res judicata.

This matter proceeded to trial in March 2017. Palir's motion in limine to preclude any instruction to the jury relating to him being assessed fault, urging that res judicata barred any such evidence, was granted in part and denied in part. The Church was allowed to introduce evidence of Palir's negligence, but not evidence regarding whether Palir knew or should have known of a defective or hazardous condition in the barbecue trailer pursuant to La.Civ.Code art. 2317.1.

Following a jury trial, the jury assessed Palir with 50% of the fault, and the Church with 50% of the fault. The jury made the following damage awards to Palir:

| | |
|---|---|
| 1) PAIN AND SUFFERING, PAST AND FUTURE | $60,000 |
| 2) MENTAL ANGUISH, PAST AND FUTURE | $30,000 |
| 3) LOSS OF ENJOYMENT OF LIFE, PAST AND FUTURE | $10,000 |
| 4) MEDICAL EXPENSES | $81,477.45 |
| 5) LOST WAGES | $10,800.00 |

The trial court rendered a judgment in June 2017, in favor of Palir in the amount of $96,138.72 based on the allocation of 50% of the fault to him. Palir now appeals. For the following reasons, we affirm.

## ASSIGNMENTS OF ERROR

1. The trial court erred by allowing the jury to assess fault to John Palir, III;

2. The jury erred by assessing or apportioning 50% fault to John Palir, III.

## DISCUSSION

### *Res Judicata*

Palir argues that the summary judgment rendered in the *Reeves* matter precluded any fault from being rendered against him in this matter based on res judicata. In reviewing the trial court's denial of Palir's motion in limine relating to the issue of res judicata, we accord great discretion to the trial court. *Heller v. Nobel Ins. Group*, 00-0261 (La. 2/2/00), 753 So.2d 841; *Scott v. Dauterive Hosp. Corp.*, 02-1364 (La.App. 3 Cir. 4/23/03), 851 So.2d 1152, *writ denied*, 03-2005 (La. 10/31/03), 857 So.2d 487. Louisiana Revised Statutes 13:4231 provides:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
>
> (1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
>
> (2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
>
> (3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

The Church argues that the summary judgment in the *Reeves* matter only pertained to the issue of whether Palir was negligent as an employee of the Church, thereby making it vicariously liable for his tortious actions. The Church states that summary judgment was granted in favor of Palir and was unopposed by the Church relating to the vicarious liability issue in the *Reeves* matter. Terry Reeves settled with the Church before trial. The Church argued that the summary judgment did

not preclude a determination of Palir's fault in his own action against the Church.

The following colloquy occurred between counsel and the trial court:

> TRIAL COURT: But let's look at that. Let's make sure the judgment says what y'all think it says or exactly what it says. I mean, you are saying there is no way he could ever be found at fault. That's what the judgment says. There is no way he could have been found at fault at all, or did it have to do with his knowledge of the defect?
>
> COUNSEL FOR PALIR: Let me look at that, Your Honor.
>
> TRIAL COURT: Okay, it could be, I mean, those are two different issues. And I believe that's what counsel for the Defendant is saying, and I think they are actually – I understand that they're actually agreeing with you about saying they don't believe that he can – or they are not going to try to based on that Summary Judgment, the granting of that Motion for Summary Judgment, that they recognize that they can't come in say that he knew or should have known because that's what the judgment said.
>
> But they were saying, there may be some other negligence that he's responsible for in the way he carried out the act of lighting that barbecue pit that day, that they may have an opportunity to present evidence on.
>
> . . .
>
> Was that not the issue on the Motion for Summary Judgment; is whether as the pastor he was – is there evidence to show that he knew or should have known?
>
> COUNSEL FOR CHURCH: Your Honor, the judgment in that case just said, "Granted as prayed for."
>
> So you have to go back to the Motion itself.

The Church's counsel goes on to state that Palir argued in that motion that he did not have custody or control of the barbecue trailer and did not know of a defect.

The trial court further found:

> I guess just to be clear for the record, as far as the Motion in Limine by Mr. Palir, I guess I will say I am granting it in part, only with regard to the issue of whether Mr. Palir knew or should have known of the defect; but I'm denying it as it relates to any other negligence, actions on his part if the Defendant has the evidence to present on that issue.

In *Burguieres v. Pollingue*, 02-1385, p.8 (La. 2/25/03), 843 So.2d 1049, 1054, the supreme court reviewed the jurisprudential underpinnings of the legal theory of res judicata and concluded that the "identity of parties" requirement mandates that the "parties must appear in the same capacities in both suits." The parties to the suits here undoubtedly are not appearing in the same capacities; in the *Reeves* matter Palir was a defendant for purposes of determining the Church's liability under La.Civ.Code art. 2317.1, whereas in this matter, Palir is asserting his own claim for damages against the Church. We note, though, that although the judgment granting summary judgment in favor of Palir is in the record, it states only that summary judgment is being granted in his favor. There are no reasons for judgment nor any documents submitted into evidence in this case relating to the substance of the granting of summary judgment in Palir's favor. Nevertheless, based on the testimony of counsel relating to the summary judgment in the *Reeves* matter and the trial court's findings, we find no error in the trial court's partial denial of Palir's motion in limine relating to the res judicata effect of the former judgment. Even without the record of the summary judgment granted in the *Reeves* matter, it is clear that the requirement that "the parties must appear in both suits in the same capacities" is simply not met in this case. *Burguieres v. Pollingue*, 843 So.2d at 1055.

***Fault Apportionment***

Alternatively, Palir argues that if res judicata does not apply, the jury manifestly erred in assessing any fault for the explosion to him. In *Jolivette v. Hebert*, 16-246, pp. 6-7 (La.App. 3 Cir. 10/12/16), 203 So.3d 400, 405-06, we stated:

> In reviewing fault allocation, the factfinder's allocation is a factual determination that is owed deference and is subject to the manifest error/clearly wrong standard of review. *Clement v. Frey,* 95-

5

1119, 95-1163 (La. 1/16/96), 666 So.2d 607. The supreme court recently summarized the manifest error standard of review:

> This court has announced a two-part test for the reversal of a factfinder's determinations: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). *See Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987). This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's findings. *See id.* The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. *See id.*
> *Lobell v. Rosenberg*, 15–247, p.10 (La. 10/14/15), 186 So.3d 83, 90.

In reviewing the factfinder's allocation of fault, the supreme court has set forth various factors for consideration:

> (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.

*Watson v. State Farm Fire & Cas. Ins. Co.*, 469 So.2d 967, 974 (La.1985). In *Clement*, 666 So.2d at 611, the supreme court instructs that: "After the court of appeal finds a 'clearly wrong' apportionment of fault, it should adjust the award, but only to the extent of lowering or raising it to the highest or lowest point respectively which is reasonably within the trial court's discretion."

In accordance with La.Civ.Code art. 2317.1, the jury returned a verdict finding that the barbecue trailer was in the custody of the Church, that it presented an unreasonable risk of harm to Palir, and that the Church knew or should have known of the defect. It further found Palir 50% at fault in causing his own damages.

6

*Dana Reeves*[1]

Dana Reeves, Clifton Reeves' daughter, and a twenty-three year member of the Church who had been the secretary for the ten years prior to trial, testified that the Church has no employees. She said she works as a bus driver and before that as a phlebotomist for fourteen years. Dana testified that Palir was voted in by the congregation and receives a "love offering" if there is enough money. She said the Church did not provide him with a vehicle, clothing allowance, or a rectory but he does receive a housing allowance. Dana said the Church had twenty-five members, including children.

Dana testified that her father and Chris Dronet kept up the barbecue trailer at the Church. She said the barbecue trailer had been donated to the Church in the late nineties by another church. She said that the barbecue trailer has never been inspected nor repaired since the time of the donation; however, church members ensure that it is cleaned before each use. Of the three church board members including her father, Dronet, and Palir, none receive any monies save for Palir. She said he received about $650 a week at the time of the accident. She said that all church members pitch in and help out and that Palir helped and used the barbecue trailer as much as anyone else. Dana said that no one had experienced problems with the barbecue trailer before this incident and it had been used just a few weeks before the incident.

*Clifton Reeves*

Clifton was eighty-four years old at the time of trial and had known Palir for about twenty to twenty-five years. He said the board of directors does not give a list of duties to incoming pastors. He stated that as a spiritual leader of a small church there are no official duties or responsibilities but that Palir would help out.

---

[1] We refer to the Reeves family members by first name to differentiate amongst them.

Clifton said that no one at the Church "maintained" the barbecue trailer except for filling the propane bottles and cleaning the pit. He said he filled the propane bottles.

Clifton then described the accident:

Well, they opened the windows and the doors on the pit. I went to the front and turned the valve on the propane bottle and walked back around and got in the trailer, and Pastor Palir got in with me. I got over to where the pilot light was to push the button down for the pilot light to light and to ignite.

Before I pushed it down, the door was opened; and normally that pilot light has to be warmed up a little bit before it will catch. But anyhow, as soon as I pushed the button down, he [Palir] struck the striker, and it blew him out of the trailer.

And Terry was standing behind him, and it blew him out with him. A big ball of fire came out of there. . . .

Clifton described the burns Palir received that "looked like a glove coming off, his skin falling off his hand." Clifton said that no one has ever had any problems using the barbecue trailer and that if he had any idea that something was wrong with it, he would not have used it. He said it was used frequently, most recently in May 2011. Clifton testified that he and Palir lit the pilot light the same way they had always done it before. He said there were no indications that this accident was about to occur. Clifton testified that no one was officially in charge of the barbecue trailer and that there was no maintenance committee, but that he and Palir used the barbecue trailer the most of anyone at the church.

*Allen Dudden*[2]

Dudden, an expert in the field of propane delivery systems, testified that he had been retained in hundreds of cases. Dudden testified that he conducted two on-site inspections in this case and read numerous depositions. Dudden concluded that the rotary rack oven, including the gas valve, gas trains, and delivery systems,

---

[2] Dudden's deposition was read into the record.

was an "unlisted appliance" that was never tested for safety, performance, or construction. It had no manufacturer labels or lighting instructions. He noted that the condition of the barbecue trailer was deteriorating and rusting, was not maintained, and did not comply with codes. Dudden said the regulator was a single-stage regulator instead of a two-stage regulator and that the tank itself was "illegal" in that, after 2002, propane tanks lacking an overfill prevention device (OPD) should not have been in use. Dudden opined that the lack of an OPD valve could have caused the accident and that the single-stage versus double stage "definitely" could have caused this accident.

Dudden then discussed the lack of maintenance to the barbecue trailer itself and the propane delivery system. He said regulators have a ten-year life span and that propane tanks should be regularly checked. Additionally, Dudden found the hoses that were used were not for use with propane or gases, the valve control had excess pressure for the load it was designed for, the gas piping was corroded, the oven's electrical system was not to code, the bottom of the oven was rusted and there were holes through it in the combustion chamber, the interior was excessively dirty, and the racks were not cleaned. Dudden then described testing he conducted of the unit at a later date.

Dudden concluded that the barbecue trailer "definitely did not comply with codes and standards." When asked whether a person without superior knowledge of propane systems would know that the unit was not in compliance, Dudden testified:

> They shouldn't be working with it. So they wouldn't know that, that is correct. And that's why the instructions are so important in labeling the appliance. And why they should have called a propane company out to inspect that and guide them as to how they should have used it.

Regarding the propane tank no longer meeting regulations, Dudden testified: "The church would not have known that, but the station that filled that tank, refilled it, would have been aware of it; and they should not have filled it." Dudden again testified that if a propane supplier had been called out to inspect "this whole setup" a change to a two-stage regulator would have been the correct recommendation. When questioned if this accident would not have occurred if a two-stage regulator had been in place, Dudden testified:

> That's a hard one to answer because accidents can occur even if everything is operating properly. Okay. So in all probability, if this had been properly installed and the unit had been properly maintained and that safety control been verified on a periodic basis that it was functioning properly, and had the pilot been in the proper location, then it's most likely it would have operated properly.

Dudden was of the opinion that any qualified propane inspector would have noted the numerous deficiencies in this unit. He said the Church should have had the unit inspected when they received it and instructions should have been prepared for it if it had none.

### John Palir, III

Palir, who was fifty-seven years old at the time of trial, testified that he is an auto and frame specialist and manages a body shop. He had been pastor of the Church since 2008, but had been an assistant pastor of the Church in the 1990s when the barbecue trailer was gifted to the Church. He testified that he was not an employee of the Church but an independent contractor and files a Schedule C with the IRS. Palir said he pays self-employment tax on "love offerings" that he receives from the Church. He said there was no set amount for the love offerings and that sometimes he received no money. He said that he does receive a housing allowance up to $15,000 per IRS regulations. Palir said his obligation to the Church was as its "spiritual leader" and that he had never received any other

official duties or responsibilities relating to the inspection and maintenance of the Church, but that he helps where he can. He said the Church has no employees and that everyone volunteers.

Regarding the barbecue trailer, Palir said the congregants took care of it and it was never his duty to take care of it. When asked to pick a person that took the most responsibility for it, he identified Clifton Reeves. Palir said that Reeves was the person who had the propane tank refilled.

Regarding the day of the accident, Palir said that upon entering the barbecue trailer, the rotisserie was working. He did not adjust any valves or make changes to anything in the barbecue trailer. He had the wand lighter and had to get down on the ground to light the pilot. Palir said that when you light the pilot you have to turn the striker on. He testified that at that point he saw the pilot and lit it and instantaneously a ball of fire knocked him and Terry Reeves out of the barbecue trailer and into the church yard.

Palir testified that he had no knowledge of anyone ever having problems with the barbecue trailer and that if he had any idea something was wrong with it he would not have used it. He said that he lit the pilot light the way he always had in the past and never had any problems. Palir said that he and Clifton Reeves were the people at the Church who most used the barbecue trailer. He admitted that neither he nor Reeves nor anyone else at the church had any expertise in propane delivery systems.

In reviewing the evidence, we cannot say that the jury erred in assigning Palir 50% of the fault in causing his own injuries. It was undisputed that he and Reeves were the people most familiar with the barbecue trailer, that the barbecue trailer was decades old, and that it had never been serviced. Palir had been an assistant pastor of the Church in the 1990s when the barbecue trailer had been

11

gifted to the Church, thus he was aware of the age of the unit. As a member of the three-person church board, the pastor, and the leader of the church, Palir had a duty to act reasonably in all matters pertaining to the Church and his continued use of a barbecue trailer for such an extended period of time without ever having it inspected could reasonably be construed as independent negligence on the part of Palir. Palir's own expert testified regarding the deteriorating condition of the barbecue trailer, which did not require propane system expertise to determine. Based on its age and condition, a jury could conclude that a reasonable person would be required to regularly have it inspected and serviced in order that it is safe for use. Accordingly, we cannot find that the jury manifestly erred in assessing Palir with 50% of the fault.

## CONCLUSION

The trial court's judgment denying Palir's motion in limine in part, relating to his being free from all fault, is affirmed. The judgment in favor of Palir in the amount of $96,138.72 is affirmed. All costs of this appeal are assessed to the plaintiff-appellant, John Palir, III.

**AFFIRMED**.